841 F.2d 159
 Bankr. L. Rep. P 72,224
In re AMERICAN RESERVE CORPORATION, Debtor.
LaSALLE NATIONAL BANK, The Bank of California, and Triumph
Investment Trust, Ltd., Appellants,
v.
J. William HOLLAND, Chapter 7 Trustee for the Estate of
American Reserve Corporation, and Wallace J.
Stenhouse, Appellees.
 No. 87-1347.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1987.
Decided Dec. 30, 1987.
 
 William P. Smith, Chapman & Cutler, Chicago, Ill., for appellants.
 Cynthia L. Pope, Ross & Hardies, Chicago, Ill., for appellees.
 Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 MANION, Circuit Judge.
 
 
 1
 Appellants, who are creditors of the bankrupt, American Reserve Corporation (ARC), appeal the district court's judgment affirming the bankruptcy court's approval of the trustee's settlement of a claim by ARC's former chief executive officer. Because the bankruptcy judge's findings are not adequate to allow us to review the settlement, we reverse and remand for further findings.
 
 I.
 
 2
 In April, 1980, ARC filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101-1174. During the reorganization, ARC retained its assets and its top management. On November 16, 1981, ARC's reorganization proceeding was converted to a liquidation proceeding under Chapter 7, 11 U.S.C. Secs. 701-766. On November 20, 1981, the bankruptcy court appointed a trustee for the bankruptcy estate.
 
 
 3
 ARC filed a Final Report and Account of Debtor-In-Possession in May, 1982, and an amended Final Report in October, 1982. Both the report and amended report listed a debt of $79,350 for the employment services of Wallace J. Stenhouse, ARC's former chief executive officer. The $79,350 included $69,800 for accrued severance pay, $6,350 for accrued vacation pay, and $3,200 for services Stenhouse allegedly rendered for ARC between November 16, 1981 (the date the reorganization was converted to a liquidation) and November 20, 1981 (the date the bankruptcy court appointed the trustee). Stenhouse maintained in his filings in the bankruptcy court that his claim was payable as an estate administrative expense. See 11 U.S.C. Sec. 503(b)(1)(A). As an administrative expense, Stenhouse's claim would have priority over unsecured claims. 11 U.S.C. Sec. 507(a).
 
 
 4
 The trustee initially objected to Stenhouse's demands. The appellants (who collectively held claims for more than 90% of ARC's uncontested, unsubordinated debt), and the State of Illinois (which is not a party to this appeal) also objected to Stenhouse's demands. Stenhouse's claim remained pending, and the parties disputed the claim for almost three years.
 
 
 5
 In December, 1985, the trustee and Stenhouse agreed to settle the claim. The settlement provided that Stenhouse receive $5,000; in exchange, Stenhouse agreed to release the wage, severance pay, and vacation pay claims against the estate. The settlement did not affect any claim the trustee or any creditor might have against Stenhouse. On February 20, 1986, the bankruptcy court heard testimony from the trustee and arguments from the attorneys for the trustee, Stenhouse, the appellants, and the State of Illinois. Over the appellants' and the State of Illinois' objections, the court approved the settlement, finding that the settlement was in the estate's and the creditors' best interests. The court made no other findings of fact or conclusions of law. On appeal, the district court affirmed the bankruptcy court.
 
 II.
 
 6
 A bankruptcy judge may approve a settlement in a liquidation proceeding if the settlement is in the estate's best interests. In re A & C Properties, 784 F.2d 1377, 1380, 1382 (9th Cir.), cert. denied, Martin v. Robinson, --- U.S. ----, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); In re Blair, 538 F.2d 849, 852 (9th Cir.1976); In re Patel, 43 B.R. 500, 505 (N.D.Ill.1984); In re Central Ice Cream Co., 59 B.R. 476, 487 (Bankr.N.D.Ill.1985). Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits. Among the factors the bankruptcy judge should consider in his analysis are the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay (including the possibility that disapproving the settlement will cause wasting of assets). See In re A & C Properties, 784 F.2d at 1381; In re Blair, 538 F.2d at 851; cf. McDonald v. Chicago Milwaukee Corp., 565 F.2d 416, 427 (7th Cir.1977) (noting similar factors to consider in approving a settlement in a class action). The bankruptcy judge should also consider the creditors' objections to the settlement; however, the creditors' views are not controlling. In re A & C Properties, 784 F.2d at 1382.
 
 
 7
 The appellants insist that a bankruptcy judge may approve a settlement only if it is "fair and equitable." "Fair and equitable" is a term of art that means that " 'senior interests are entitled to full priority over junior ones.' " In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir.) (citation omitted), cert. denied, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). In a settlement context, "fair and equitable" means that the settlement reasonably accords with the competing interests' relative priorities.
 
 
 8
 Any distinction between the "best interests of the estate" and the "fair and equitable" standards is of little consequence. The cases appellants cite for the "fair and equitable" standard considered the factors we have noted above. See, e.g., Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); In re A & C Properties, 784 F.2d at 1381. Moreover, in comparing the settlement's terms with the litigation's probable costs and probable benefits, the central inquiry in determining whether a proposed settlement is in an estate's best interests, the bankruptcy judge must necessarily examine the relative priorities of the contested claim and the estate's other claims. Claims with different priorities will have different settlement values. For example, administrative expenses have priority over general, unsecured claims; therefore, all else being equal, an administrative expense claim will have a higher settlement value than a general unsecured claim. Properly viewed then, the "fair and equitable" analysis--that is, comparing claims' relative priorities--is just one factor for the bankruptcy judge to consider in determining whether a settlement is in the estate's best interest.
 
 
 9
 Because the bankruptcy judge is "uniquely positioned to consider the equities and reasonableness of a particular compromise," we will not reverse that determination unless the bankruptcy judge abused his discretion. In re Patel, 43 B.R. at 505; see also In re Emerald Oil Co., 807 F.2d 1234, 1239 (5th Cir.1987); In re Walsh Construction Inc., 669 F.2d 1325, 1328 (9th Cir.1982). As we have recognized in other contexts (see, e.g., United States v. Beasley, 809 F.2d 1273, 1278-79 (7th Cir.1987) which discusses abuse of discretion in admitting other acts evidence under Fed.R.Evid. 403) the abuse of discretion standard recognizes that because of the bankruptcy judge's unique position, second-guessing by appellate courts will do little to improve upon bankruptcy judges' decisions. But the abuse of discretion standard implies that the bankruptcy judge must actually exercise his discretion. He may not simply accept the trustee's word that the settlement is reasonable, nor may he merely "rubber-stamp" the trustee's proposal. The bankruptcy judge must apprise himself of all facts necessary to evaluate the settlement and make an "informed and independent judgment" about the settlement. See TMT Trailer Ferry, 390 U.S. at 424, 434, 88 S.Ct. at 1163, 1168; In re A & C Properties, 784 F.2d at 1383.
 
 
 10
 In exercising his discretion, the bankruptcy judge must also give the reviewing court "some basis for distinguishing between well-reasoned conclusions arrived at after comprehensive consideration of all relevant factors, and mere boilerplate approval ... unsupported by evaluation of the facts or analysis of the law." TMT Trailer Ferry, 390 U.S. at 434, 88 S.Ct. at 1168. In other words, the bankruptcy judge must make findings and explain his reasoning sufficiently to show that he examined the proper factors and made an informed and independent judgment.
 
 
 11
 Here, the bankruptcy judge did not make findings adequate for us to determine that he considered the proper factors and made an independent judgment about the settlement. Still, the trustee and Stenhouse urge us to affirm the settlement because they say the record amply supports it. Dictum in TMT Trailer Ferry supports this course: "If, indeed, the record contained adequate facts to support the decision of the trial court to approve the proposed compromises, a reviewing court would be properly reluctant to attack that action solely because the court failed to set forth its reasons or the evidence on which they were based." 390 U.S. at 437, 88 S.Ct. at 1170. However, the TMT Trailer Ferry dictum does not require a reviewing court to comb the record to uphold a settlement despite inadequate findings. Requiring findings will assist both the bankruptcy courts and reviewing courts in their tasks. Requiring findings compels the bankruptcy judge to focus on the appropriate criteria, and enables him to make an independent, reasoned decision. The findings also facilitate more focused, and therefore more efficient, judicial review. Without findings, a focused and efficient review becomes difficult, if not impossible.
 
 
 12
 Since a bankruptcy judge will normally be familiar with the governing law and the factual issues surrounding a settlement, setting out his reasons for approving the settlement should not be unduly burdensome. A bankruptcy judge need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision. The judge may make either written or oral findings; form is not important, so long as the findings show the reviewing court that the judge properly exercised his discretion.
 
 
 13
 This case shows the danger of inadequate findings. The bankruptcy judge found that the settlement was in the estate's and creditors' best interests. But the judge did not discuss his reasons for this finding, nor did he discuss the legal issues relevant to the claim. The bankruptcy judge did mention that litigation expenses would exceed the settlement amount. However, it appears that the bankruptcy judge merely took the trustee's word on litigation costs. The record does not contain any evidence of what the expected litigation costs were. Nor does the judge explain, based on the evidence that was in the record or on his analysis of the legal issues involved in the claim, why he accepted the trustee's testimony that litigation costs would exceed the settlement. Furthermore, the record is replete with statements by the bankruptcy judge that the trustee considered factors such as expense and litigation risks, but does not contain any indication that the judge independently evaluated those or other relevant factors. Although the judge mentioned a number of times during the settlement approval hearing that he could not just accept the trustee's judgment, he apparently (as far as we can tell from the record before us) did just that. Requiring the bankruptcy judge to adequately explain his reasoning and show that he evaluated the proper factors will help avoid these problems in the future.
 
 
 14
 Because the bankruptcy judge made inadequate findings to support the settlement, we reverse and remand this case to the district court with instructions to remand to the bankruptcy court to make proper findings consistent with this opinion. On remand, the bankruptcy judge may conduct further proceedings and take further testimony as he deems necessary to make his findings.
 
 
 15
 REVERSED AND REMANDED.