**In re SALANT CORPORATION, et al., Debtors.**

No. 93 Civ. 6932 (JFK).
Bankruptcy No. 90–B–12037(CB).

United States District Court,
S.D. New York.

Dec. 14, 1994.

Kronish, Lieb, Weiner & Hellman, (Richard Lieb, Tara Hannon, of counsel), New York City, for appellant Official Committee of Equity Sec. Holders.

Fried, Frank, Harris, Shriver & Jacobson, (Robert E. Gerber, David Schwartz, of counsel), New York City, for debtors.

### OPINION AND ORDER

KEENAN, District Judge:

The Official Committee of Equity Security Holders ("Equity Committee") appeals from the Bankruptcy Court's order that approved a Chapter 11 consummation bonus of $1,666,665.00 for the debtor's Chief Executive Officer. Before the Court is appellee Salant Corporation's ("Salant") motion to dismiss that appeal, pursuant to Rule 8011 of the Federal Rules on Bankruptcy Procedure. For the reasons set forth below, the motion to dismiss the appeal is granted.

### BACKGROUND

Equity Committee was formed pursuant to the Bankruptcy Court's order in the Chapter 11 case of Salant. In an order dated July 30, 1993, the Bankruptcy Court allowed a $1,666,665.00 Chapter 11 bonus to be paid by

Salant to its Chief Executive Officer, Nicholas P. DiPaolo, as part of Salant's proposed reorganization plan.

Equity Committee objects to the payment of the bonus. In accordance with the Bankruptcy Code, Salant sought the Bankruptcy Court's approval of the proposed bonus. Salant presented its proposed plan at the confirmation hearing for the reorganization.

The bonus consists of two parts: 1) $900,000 in cash; plus 2) an additional $766,665 in cash to offset the tax consequences of the $900,000. The bonus was to be paid in "recognition of the extraordinary efforts of [DiPaolo] throughout the Chapter 11 case." Salant also stated that the bonus would be payment for "past services ... during [Salant's] Chapter 11 case." Salant contends the DiPaolo's leadership was the key element in Salant's return to profitability and that DiPaolo was crucial in forging a reorganization plan that was agreeable to almost all concerned parties.

Salant and DiPaolo have an employment relationship that extends back to 1988. As of March 27, 1991, after the Chapter 11 filing, DiPaolo became Salant's Chief Executive Officer under a new employment contract (the "1991 Agreement"). That agreement provided for bonuses and stated that DiPaolo's employment would continue under its terms until one year after consummation of the plan of reorganization. Salant's reorganization plan was "consummated" on September 20, 1993. Equity Committee points out that DiPaolo was obligated under contract to Salant until September 24, 1994. Equity Committee contends that therefore the bonus was not designed to dissuade DiPaolo from accepting alternative employment. The bonus was purely a reward for past service. Equity Committee contends that such a bonus is not allowable.

In connection with the reorganization, DiPaolo and Salant entered into a new employment agreement (the "1993 Agreement") even though the 1991 Agreement was still operative. The 1993 Agreement included the "consummation bonus" disputed here. Equity Committee contends that the bonus was compensation for services that were fully contemplated and compensated for by the 1991 Agreement, and characterizes the bonus as a "gift." Salant, on the other hand, argues that the bonus was necessary to ensure that DiPaolo would remain at Salant—the bonus ensured the critical matter of continuing leadership.

In support of the bonus at the confirmation hearing before the bankruptcy court, Salant presented the testimony of Brad Eric Scheler, Esq., the outside general counsel for Salant. Scheler testified that DiPaolo was well regarded in the apparel industry, that he was afraid Salant might "lose" DiPaolo, and that competitors might try to lure DiPaolo away. Scheler testified that the bonus was reasonable as compared to salaries paid in the industry, based on a newspaper article of those salaries. Equity Committee contends that Scheler's testimony was insufficient to establish "reasonableness," because Scheler was not an expert on compensation. Moreover, Equity Committee points out that the bulk of the apparel companies listed in the article were not undergoing Chapter 11 reorganization.

Equity Committee contends that under bankruptcy law, bonuses are only allowed during reorganization in rare and extraordinary circumstances. Equity Committee urges that the circumstances here are not the type to validate a bonus. Equity Committee additionally argues that this bonus is precluded by New York contract law. Equity Committee suggests that there is nothing in the record to show any specific circumstances demonstrating extraordinary service by DiPaolo, or anything more than what Salant had a right to expect by virtue of the employment contracts.

The Bankruptcy Court approved the bonus to DiPaolo at the confirmation hearing held on July 26, 1993. The Bankruptcy Court stated that it found the bonus to be reasonable, as long as it was paid out in three installments, with the last payment not payable until December of 1994. As of this writing, two of the three installments have been paid out. The Bankruptcy Court stated that the bonus was intended "to encourage and motivate [DiPaolo] to remain in the employ of Reorganized Salant."

## DISCUSSION

Equity Committee presents the following issues on appeal to this Court: 1) does bankruptcy law and policy bar a Chapter 11 debtor from paying an executive a bonus for past services, especially in the absence of extraordinary circumstances; 2) did the Bankruptcy Court err in approving the bonus as reasonable solely on the basis of testimony of bankruptcy counsel without expert evidence or any evidence as to specific extraordinary efforts; and 3) did the Bankruptcy Court err in awarding the bonus for prior services that · DiPaolo was already compensated for pursuant to an earlier employment agreement.

Salant, now fully reorganized and rehabilitated, moves to dismiss the appeal on two grounds: 1) Equity Committee lacks standing to prosecute· this appeal; and 2) the appeal is moot given Salant's status as a fully reorganized and rehabilitated debtor.

### I. Standing

For the following reasons, this Court holds that the Equity Committee lacks the requisite standing to prosecute this appeal.

#### A. Legal Standards

■ The Bankruptcy Code of 1978, 11 U.S.C. § 101 *et seq.*, does not contain an express statutory directive on who has standing to appeal from an order entered by a bankruptcy court. In the absence of an explicit directive the Second Circuit has established a rule based on pre-Code law—the appellant, in order to have standing to appeal a bankruptcy court order, must be a "person aggrieved" by that order. *See International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir.1991).

■ The term "person aggrieved" has been defined by the Second Circuit as meaning one who has been "directly and adversely affected pecuniarily by" the challenged bankruptcy court order. *Id., quoting In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). Bankruptcy law policy requires such limited standing because:

[I]f appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order.

*Kane v. Johns–Manville Corp.*, 843 F.2d 636, 642 (2d Cir.1988).

Although not in this circuit, the "person aggrieved" requirement has been held to deny to official committees akin the Equity Committee the standing to appeal. *See, e.g., Unsecured Creditors Comm. v. Leavitt Structural Tubing Co.*, 55 B.R. 710 (N.D.Ill. 1985), *aff'd*, 796 F.2d 477 (7th Cir.1986) (official unsecured creditors committee did not have standing to contest confirmation of a debtor's reorganization plan because it was not a "person aggrieved"). That court noted the expansive right to contest a matter in bankruptcy court as contrasted to the strictly limited right to appeal a matter to the district court. *See id.* at 711.

#### B. Salant's Arguments

Salant argues that the Equity Committee is not a "person aggrieved" by the bonus paid to DiPaolo, such that they have the right to appeal the matter in federal court. Salant notes that the Equity Committee, and those it represents, have neither a direct nor indirect claim to the money paid to DiPaolo. The bonus paid to DiPaolo comes out of Salant's cash. Had the bonus been disapproved, the funds would have remained with Salant—they would not have been paid out to the equity holders. Therefore, Salant contends that the Equity Committee neither has nor represents a pecuniary interest.

Salant further argues that the shareholder status of the equity holders (and the argument that stock value would rise if the bonus was not paid out, thereby creating a pecuniary interest) fails to create standing in the Equity Committee. Salant cites case law, again not of this circuit, that holds that shareholder status is insufficient to confer standing. *See, e.g., In re Central Ice Cream Co.*, 62 B.R. 357, 360 (N.D.Ill.1986), *aff'd in part and dismissed in part on other grounds*, 836 F.2d 1068 (7th Cir.1987) (equity holder shareholders do not have standing to appeal a bankruptcy court's approval of a

settlement agreement—although the value of stock could be affected by the settlement agreement, the funds at issue belong to the debtor corporation, not the equity holders); *Holta v. Zerbetz*, 145 B.R. 637, 641 (9th Cir. BAP 1992) (sole shareholder of corporation that is in turn majority shareholder of debtor corporation does not have standing to appeal the court-ordered disposition of debtor corporation's funds); *In re DuPage Boiler Works, Inc.*, 965 F.2d 296, 298 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 409, 121 L.Ed.2d 334 (1992) (shareholder status does not confer standing to appeal a court-approved settlement). These cases universally hold that the nexus is simply too indirect to meet the "person aggrieved" standard. Salant therefore argues that Equity Committee lacks standing to appeal the bonus in this case.

In addition, Salant notes that the Equity Committee was officially dissolved on the Consummation Date (September 20, 1993) by the Confirmation Order of the Bankruptcy Court. Equity Committee survived that date for the "sole and limited purpose of responding to applications for allowance of compensation and reimbursement of expenses filed in the Chapter 11 Cases." *See* Confirmation Order, at 13. Salant contends that that exception does not apply to these circumstances and therefore, Equity Committee is not even a "person" for the purposes of appealing the Confirmation Order.

### C. *Equity Committee's Arguments*

Equity Committee disputes Salant's contention that it does not have standing the prosecute this appeal. Equity Committee argues that its standing is conferred by section 1109(b) of the Bankruptcy Code. *See* Bankruptcy Code of 1978, 11 U.S.C. § 1109(b). That section provides:

> A party in interest, including the debtor, the trustee, the creditors' committee, the equity security holder's committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this Chapter.

11 U.S.C. § 1109(b). Under this section, an equity security holders committee, formed in a Chapter 11 case pursuant to section 1102, is a "party in interest." As a party in interest, Equity Committee "may raise and may appear and be heard on any issue" in a Chapter 11 case.

Equity Committee contends that this right to be heard is not limited to the bankruptcy court. Equity Committee points out that the drafters of the Code knew how to limit appellate standing when they intended to—section 1109(a), which relates to the Securities and Exchange Commission ("SEC"), expressly withholds from the SEC the right to appeal in a Chapter 11 case. Section 1109(b), applying to the Equity Committee, does not similarly limit the right to appeal. Therefore, Equity Committee argues, it has standing to appeal. Equity Committee argues that the Fourth Circuit, in *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299, 303 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988), held that section 1109(b) does confer appellate standing on an official equity committee.

Equity Committee also argues that non-pecuniary public interests have been held sufficient to accord appellate standing. *See, e.g., In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir.1990) (pecuniary interest is not the only test—public interest may also give a sufficient stake in the action so as to confer appellate standing on the United States trustee). Therefore, Equity Committee contends that its lack of a pecuniary interest should not preclude it from appealing the Confirmation Order.

### D. *Analysis*

■ This Court has examined the various arguments, and has concluded that Equity Committee lacks standing to assert this appeal.

■ First, the Court finds that although the Equity Committee is clearly a party in interest under section 1109(b) of the Bankruptcy Code, merely being a party in interest is insufficient to confer appellate standing. The Second Circuit, in *In re Cosmopolitan*, 763 F.2d at 513, clearly held that a debtor lacked standing to appeal. Under section 1109(b) of the Bankruptcy Code, a debtor is

explicitly a "party in interest," just as is the Equity Committee. If all it took to convey appellate standing was to be a party in interest, *In re Cosmopolitan* would have been decided differently. Not only must an appellant be a party in interest to have standing, the appellant must also have a pecuniary interest in the order being challenged. *See International Trade,* 936 F.2d at 747; *In re Cosmopolitan,* 763 F.2d at 513. Therefore, the party in interest argument advanced by Equity Committee is unpersuasive.

 Second, the Court finds that Equity Committee's reliance on *In re Revco* is misplaced. In *In re Revco,* 898 F.2d 498, the Court held that the United States Trustee possessed a sufficient public interest to have appellate standing even though the trustee lacked a pecuniary interest. The Court recognizes that, as Equity Committee urges, a public interest may in certain limited circumstances be sufficient to convey appellate standing. The Court rejects the argument, however, that the Equity Committee here possesses such an interest sufficient to convey appellate standing. The supervisory role that Equity Committee performs in protecting against unreasonable waste of corporate assets, while admirable, is not sufficient to convey appellate standing in this case. The United States Trustee, an officer of the Executive branch, possesses a specific public interest mandate. The Equity Committee, while pursuing admirable goals, possesses no such interest sufficient to confer appellate standing. Therefore, the Court finds that Equity Committee's argument that it possesses public interest appellate standing is unpersuasive.

Third, the Court finds that Equity Committee's reliance on *Mabey* is also misplaced. In *Mabey,* 832 F.2d at 303, the Court found that the equity committee appellant had standing because, in part, the equity committee was a party in interest. However, the Court also explicitly found that the equity committee in *Mabey* had a pecuniary interest. This Court finds that an appellant needs to both be a party in interest and possess a pecuniary interest (or possibly a sufficiently strong public interest) to have appellate standing.

For the foregoing reasons, the Equity Committee lacks the necessary standing to prosecute this appeal. Salant's motion to dismiss the appeal on the ground that Equity Committee does not have appellate standing is therefore granted.

## II. Mootness

Because the Equity Committee lacks standing to prosecute this appeal, the issue of whether Equity Committee's appeal has become moot is now moot.

### CONCLUSION

For the reasons set forth above, the motion to dismiss the appeal is granted. The Court hereby dismisses the appeal, order this case closed, and directs the Clerk of Court to remove it from the Court's active docket.

**SO ORDERED.**