**In re WESTERN PACIFIC AIRLINES, INC., a Delaware corporation, Debtor.**

**The OFFICIAL COMMITTEE OF UNSE-CURED CREDITORS OF WESTERN PACIFIC AIRLINES, INC., Appellant,**

v.

**WESTERN PACIFIC AIRLINES, INC.; Smith Management Company; Hunt Petroleum Corporation; and GFI Company, Appellees.**

CIV. A. No. 98–K–428.
Bankruptcy No. 97–24701 SBB.

United States District Court,
D. Colorado.

March 19, 1998.

---

John F. Young, Block, Markus & Williams, L.L.C., Denver, CO, for Appellant.

Christian Onsager, Michael J. Pankow, Faegre & Benson, L.L.P., Denver, CO, for Western Pacific Airlines.

David T. Brennan, Otten Johnson, Denver, CO, for Smith Management.

Craig A. Christensen, Lindquist, Vennum & Christiansen, Denver, CO, for Hunt Petroleum & GFI Company.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

In this latest appeal in the Western Pacific Airlines ("WestPac") bankruptcy proceedings, the Official Committee of Unsecured Creditors ("Committee") appeals from Judge Brooks' February 10, 1998 oral ruling, and the February 12 Order formalizing it, which approved the settlement agreement between WestPac and Smith Management Company ("Smith") on the one hand and Hunt Petroleum Corporation ("Hunt") and GFI Company (GFI) on the other. The Committee asserts it made offers of proof at the hearing establishing a *prima facie* case that the settlement was unfair, inequitable and not in the best interests of the estate. The Committee contends Judge Brooks ignored these offers of proof and, instead, approved the settlement on the basis of legal argument and conclusory assertions of counsel rather than any facts developed at the hearing. According to the Committee, this constituted an "inherent abuse of discretion" warranting reversal under *Reiss v. Hagmann*, 881 F.2d 890 (10th Cir.1989). I disagree.

## I. *STANDING.*

■ As an initial matter, Smith raises the issue of standing. Smith asserts the Committee lacks standing to pursue its appeal because, as a result of the superpriority liens and administrative claims of the DIP Lenders, unsecured creditors have no chance of recovering any funds or property of the estate. In support of its assertion, Smith relies on *Weston v. Mann*, 18 F.3d 860 (10th Cir. 1994), and *In re Salant Corp.*, 176 B.R. 131 (S.D.N.Y.1994).

The Tenth Circuit has adopted the "persons aggrieved" standard for determining whether a party has standing to appeal a decision of the bankruptcy court. *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir.1989), *applied in Weston*, 18 F.3d at 863. Under this standard, the right to appellate review "is limited to those persons whose rights or interest are 'directly and adversely affected pecuniarily' by the decree or order of the bankruptcy court." *Id.* (quoting *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641–42 (2d Cir.1988)).

In *Weston* (as in *Holmes*), the "persons aggrieved" standard was applied to bar the appeals of individual debtors from decisions deemed to affect only the administration of the estate, not any payout or recovery of the debtors.[1] "Unless the estate is solvent and excess will eventually go to the debtor, or unless the matter involves rights unique to the debtor (footnote omitted), the debtor is not a party aggrieved by orders affecting the administration of the bankruptcy estate." *Weston*, 18 F.3d at 863–64. Smith focuses on the solvency and excess funds language in *Weston* to argue that where, as here, the estate is insolvent and no excess is expected to go to unsecured creditors, the creditors' appeal should be barred. My initial observation is that Smith's argument ignores the separate caveat in *Weston* for appeals involving rights "unique" to the appellant.

The powers and duties of a creditors committee under 11 U.S.C. § 1103 specifically include "consult[ing] with the trustee or debtor in possession concerning the administration of the case" (§ 1103(c)(1)); "investi-

---

1. I note that a different standard was applied to bar an appeal filed by a group of 11 U.S.C. § 341 creditors in *Weston*. The creditors were deemed to lack standing based on their nonparticipation in the resolution of the election disputed on appeal, not on any lack of pecuniary interest in the outcome. 18 F.3d at 864("[p]rerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy proceeding").

gat[ing] the acts, conduct, assets, liability, and financial condition of the debtor ... and any other matter relevant to the case or to the formulation of a plan" (§ 1103(c)(2)); and "perform[ing] such other services as are in the interest of those represented" (§ 1103(c)(5)). Thus, a creditors committee serves something of a "watchdog" function in bankruptcy and enjoys unique rights and responsibilities under the Code. A rule that would preclude it from appealing any decision of the bankruptcy court in which it lacks a pecuniary interest even if that decision implicates those rights and responsibilities runs afoul of *Weston*. This is particularly so where, as here, the Committee has also met the additional "prerequisites ... [of] attendance and objection at the bankruptcy court proceeding" from which the appeal is taken. *See Weston* at 864.

It is true that the *Salant* decision, in which the district court found that the supervisory role of an official committee of equity security holders served an insufficient "public interest" to convey appellate standing in the absence of a pecuniary interest, supports Smith's argument on appeal. *See Salant,* 176 B.R. at 135. *Salant* is distinguishable on its facts and, moreover, is not binding on this court.

The appeal in *Salant* involved a $1.6 million plan confirmation bonus that the Chapter 11 debtor sought to pay its CEO as a reward for his services during the reorganization and to "motivate" him to remain with the company thereafter. 176 B.R. at 132. The bankruptcy court approved the bonus, and the equity holders committee appealed. Because the bonus was to have been paid out of the company's cash such that no funds from it would have been paid to equity holders in any event, the committee could assert no direct or indirect claim to the money paid. *Id.* at 133. Here, by contrast, the transaction approved by the bankruptcy court involved considerably more than the payment of cash in which the Committee had no direct or indirect interest. Among other things, the settlement contemplated a complete release of claims between Smith/WestPac and Hunt/GFI.

The Committee's objection to the settlement was based, in part, on a potential equitable subrogation claim against Smith. The Committee argued to the bankruptcy court, as it does again on appeal, that Smith and the DIP Lenders may have breached fiduciary duties owed creditors by wrongfully withdrawing funding of WestPac at a critical stage of the reorganization. While Smith argued vociferously, and perhaps correctly, at oral argument that the Committee's claim is either not legally cognizable or is wildly speculative, these arguments are insufficient, in my mind, to deprive the Committee of all rights to pursue its appeal. The purpose of the "persons aggrieved" standard is to avoid "endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order." *Holmes,* 881 F.2d at 940. The dismissal of the Committee's appeal is not necessary to effect this purpose.

I decline to dismiss the Committee's appeal for lack of standing and proceed to the merits of the appeal.

## II. *LEGAL STANDARD.*

A bankruptcy court's approval of a settlement may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion. *Reiss,* 881 F.2d at 891–92 (10th Cir.1989)(citing *Security Nat'l Bank v. Turner (In re Ocobock),* 608 F.2d 1358, 1360 (10th Cir.1979). The decision to approve, however, "must be an informed one based upon an objective evaluation of developed facts." *Id.* at 892 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968); *United States v. AWECO, Inc. (In re AWECO),* 725 F.2d 293, 299 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984)). " 'An approval of a compromise, absent a sufficient factual foundation, inherently constitutes an abuse of discretion.' " *Reiss* at 892 quoting *AWECO,* 725 F.2d at 299). In *Reiss,* the Tenth Circuit reversed the bankruptcy court's order approving the settlement, finding there was "no indication in the record that the trustee or the courts did any legal research or made

any attempt to properly separate the issues and evaluate the facts." Id.

The question on appeal, then, is whether Judge Brooks failed adequately to evaluate and develop the facts surrounding the settlement such that his approval of the West-Pac/Hunt/GFI agreement constituted an abuse of discretion.

## III. BACKGROUND.

WestPac, Smith Management Company, Hunt and GFI entered into the subject settlement agreement on December 30, 1997 after battling for months over a $10 million note held by Hunt/GFI. The note was secured by certain accounts receivable and cash in a collateral account at Bank One Texas, N.A. (the "Collateral Account"). WestPac filed its motion for approval of the settlement agreement pursuant to Rule 9019 on January 9, 1997. See Mot. for Approval of Settlement Agreement (Appendix of Appellee, Tab 18). The Committee filed a written Objection to WestPac's motion on February 4, 1998, see Objection (Appendix of Appellee, Tab 20), and the matter was set for hearing on February 9, 1998.[2] Before the hearing, objections to the settlement by the City of Colorado Springs and the City and County of Denver were withdrawn. Thus, the only objection before the court at the hearing was that of the Committee.

At the time the settlement agreement was originally signed, it provided that Smith would purchase the note from Hunt/GFI and that the allowed secured claim would be fixed at $10,000,000. After WestPac ceased flight operations and before the hearing on West-Pac's Motion for Approval, the settlement was modified to reduce the Hunt/GFI allowed secured claim to $8,874,000 and to provide $250,000 in cash to the estate free and clear of the DIP Lenders' lien and superpriority. See Rep. Tr. of Hg. dated 2/9/98 (Appendix of Appellee, Tab 25) at pp. 6–7. Judge Brooks issued an oral ruling approving the settlement on February 10, 1998. See Rep. Tr. of Hg. dated 2/10/98 (Appellee A.P., Tab 24).

The Committee asserts WestPac submitted no evidence or offers of proof in support of its motion and that the bankruptcy court's approval of the settlement under those circumstances constituted an abuse of discretion. The Committee maintains its offers of proof at the hearing established that the settlement was neither fair, equitable nor in the best interest of the estate. Citing a lack of contrary evidence in the record, the Committee urges me to reverse.

## IV. DISCUSSION.

In an unrelated case decided several years ago, I reviewed the standards by which courts are to evaluate a settlement proposal under Reiss. See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.); 105 B.R. 971, 976–77 (D.Colo.1989). In the Kaiser case, I stated that a court's general charge is "to determine whether the settlement is fair and equitable and in the best interests of the estate." Id. at 976 (citing Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir.1988); LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.), 841 F.2d 159, 161 (7th Cir.1987)). This charge includes consideration of (1) the probable success of the litigation on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views. Id. (citing In re The Hermitage Inn, Inc., 66 B.R. 71, 72 (Bankr. D.Colo.1986)).

As the bankruptcy court in the Hermitage case recognized, the court need not resolve all of these issues, but must only identify them "so that the reasonableness of the settlement may be evaluated." In re The Hermitage, 66 B.R. at 72. The overall purpose is to weigh "carefully ... the value of the settled claim against the value to the

---

2. The February 9 hearing also included continued arguments regarding 11 U.S.C. § 1110 and the aircraft lessors' attempts to retake possession of aircraft. In addition, Judge Brooks heard argument on the liquidation proposal of WestPac and Smith; the motion of aircraft lessor SABRE to compel WestPac to assume or reject its lease over the Unsecured Creditor Committee's objection; and the motion of Mountain Air Express, Inc. for allowance of administrative expense. See Rep. Tr. (attached to Appendix of Appellee at Tab 25) at p. 1.

estate by the settlement." *In re The Hermitage,* at 72.

The Committee asserts WestPac offered no evidence and the bankruptcy court considered not evidence in evaluating the merits of the proposed settlement. Given the numerous contested evidentiary hearings over which Judge Brooks has presided during the first four months of these bankruptcy proceedings, several of which directly involved the Hunt/GFI note and security interest, the assertion that Judge Brooks's decision regarding the settlement was uninformed rings hollow. The Committee's real point, it seems, is to suggest that Judge Brooks should have made detailed or specific factual findings regarding the *Hermitage* factors or face reversal under *Reiss.*

 The suggestion to heightened formality not only overstates the holding of *Reiss,* where the bankruptcy court was reversed because it failed to consider applicable law, *see* 881 F.2d at 892–93, but also ignores the distinctions between the role of the judge in bankruptcy and that of an Article III judge. The bankruptcy judge serves as overseer and referee of ongoing proceedings in bankruptcy and the effectuator of equity over time. The Article III judge, by contrast, is called upon as an arbiter to resolve specific legal questions between adversaries requiring in a more formal evidentiary setting. Further, the Committee's suggestion misapprehends the abuse of discretion standard generally. As the Seventh Circuit succinctly stated in the *American Reserve* case, the abuse of discretion standard implies that a judge "actually exercise[s] his discretion." *E.g., In re American Reserve,* 841 F.2d at 162 (citing *TMT Trailer Ferry,* 390 U.S. at 424, 434, 88 S.Ct. at 1163, 1168). Thus, a bankruptcy judge may not "simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber-stamp' the trustee's proposal." *Id.* (quoting *TMT,* at 434, 88 S.Ct. at 1168). Instead, the bankruptcy judge must give the reviewing court "some basis for distinguishing between well-reasoned conclusions arrived at after comprehensive consideration of relevant factors and mere boilerplate approval." *TMT,* at 434, 88 S.Ct. at 1168. If the bankruptcy

judge does so, he is entitled to deference on appeal. *Ibid.* (abuse of discretion standard recognizes bankruptcy judge is " 'uniquely positioned to consider the equities and reasonableness of a particular compromise' ") (citations omitted). The bankruptcy judge's decision in *American Reserve* was reversed because the bankruptcy judge had failed to make findings adequate for the court of appeals to determine whether he had considered the proper factors and made an independent judgment about the settlement. 841 F.2d at 162–63. The instant case, in which Judge Brooks considered and rejected the objections of the Committee and made specific findings regarding the balance of the settlements benefits and detriments to the estate, simply does not fall within this category. *See* Rep. Tr. of 2/10/98 Oral Ruling (Appellee App., Tab 24) at pp. 6–8.

 The fact that Judge Brooks heard evidence and made findings regarding the matters contained in the settlement over a period of time, including a determination regarding the value of the Collateral Accounts ultimately included in the compromise settlement agreement, satisfies me that he made a comprehensive consideration of relevant factors and did not merely "rubber-stamp" WestPac's proposal. Accordingly,

While the Appellees' contention that the Committee lacks standing to pursue this appeal is REJECTED, the appeal itself is DENIED. The bankruptcy court's February 10 oral ruling, memorialized in the court's written Order dated February 12, 1998, is AFFIRMED.