Linda K. **MOOTHART,**
Plaintiff-Appellee,

v.

A. Gary **BELL, Bradley P. Pollock, Bell & Pollock, P.C., Defendants–Appellants.**

No. 93-1161.

United States Court of Appeals,
Tenth Circuit.

April 18, 1994.

Rehearing Denied May 6, 1994.

---

1500

Alexander R. Rothrock and C.M. Vandervoort of Burns, Figa & Will, P.C., Englewood, CO, for plaintiff-appellee.

Bradley P. Pollock of Bell & Pollock, P.C., Littleton, CO, for defendants-appellants.

Before LOGAN and SETH, Circuit Judges, and KELLY,* District Judge.

PATRICK F. KELLY, District Judge.

This appeal arises from the efforts of plaintiff Linda Moothart to obtain information from her former employers, Gary Bell and Bradley Pollock, as individuals, and defendant Bell & Pollock, P.C., regarding her rights under an employee benefit plan. Specifically, Ms. Moothart brought suit under 29 U.S.C. §§ 1024 and 1132(c), the disclosure provisions of the Employee Retirement Income Security Act (ERISA), seeking copies of various plan documents and a penalty. The district court granted summary judgment in her favor on the merits, then held a trial to determine the proper amount, if any, of penalties and attorneys' fees. The court ultimately entered judgment in Ms. Moothart's favor in the amount of $29,565.75. The court also entered summary judgment in favor of Ms. Moothart on defendants' abuse of process counterclaim. Defendants now appeal those rulings.[1]

## Facts

Linda Moothart worked as a legal secretary in defendants' law firm for approximately four years. She resigned her position on August 23, 1988. In early 1989, Ms. Moothart enlisted attorney Richard Finke to help her with some tax planning. On February 23, 1989, Mr. Finke wrote a letter to Bradley

---

* Honorable Patrick F. Kelly, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Pollock advising him that Ms. Moothart was doing some planning and needed certain information regarding the firm's profit sharing plan. He requested copies of Bell & Pollock's summary plan description, summary annual report, and employee fringe benefit manual.

When he did not receive a response, Mr. Finke wrote a second letter on March 14, 1989. He wrote a third on April 3. On April 7, 1989, Bradley Pollock responded. He did not forward any documents. The response was in the nature of a tirade, questioning Mr. Finke's need for the documents and advising him that Ms. Moothart was not entitled to any benefits or information.[2] In his closing, Mr. Pollock advised that "if this matter is going to lead to litigation, then demand is made that [Ms. Moothart] stop all further contact with all persons in this firm." Appellee's Supp.App. at 10.

On April 10, 1989, Mr. Finke responded, advising Mr. Pollock that he thought, based on his conversations with Ms. Moothart, that she could have some vested interest in the firm's qualified plan. He made an additional request for the documents identified in his first letter. On April 13, Mr. Pollock responded, advising that the firm had not funded its profit sharing plan during the time Ms. Moothart was employed at the firm and, therefore, she had no benefits coming. The letter made additional accusations regarding Ms. Moothart's intentions and advised that she had received all the information Mr. Finke requested.

On April 17, Mr. Finke wrote yet another letter to Mr. Pollock, once again requesting a copy of the plan summary. The letter also advised that Mr. Finke sent a copy of the April 13 letter to his client and was waiting for her thoughts. Mr. Finke stated he would get back to Mr. Pollock when he heard from Ms. Moothart. The letter closed by stating, "I am not trying to make this adversarial in nature, but merely requesting a copy of something Ms. Moothart is legally entitled to receive." *Id.* at 18.

The parties did not correspond further. On March 23, 1990, Ms. Moothart filed a complaint pursuant to 29 U.S.C. §§ 1024(b)(4) and 1132(c), alleging that Bell & Pollock, and Gary Bell and Bradley Pollock, individually, had violated ERISA through their failure to provide plan documents in accordance with the requests which attorney Finke made in February, March, and April of 1989. The complaint requested disclosure of the documents, as well as assessment of penalties.

The defendants filed their answer, pro se, on April 6, 1990. On April 10, counsel for the plaintiff received a copy of the summary plan description. At trial, Bell & Pollock argued they also sent a copy of the summary annual report in early April. Counsel for Ms. Moothart stated she never received that copy, and the district court found that, in fact, the annual report was not produced until the day of trial. On the merits, the court granted summary judgment in favor of the plaintiff.

Following testimony on the penalty question and appropriateness of attorneys' fees, the court awarded a penalty in the amount of $30 per day. The court determined that the penalty would run from thirty days after Mr. Finke's first letter to the date of his last correspondence, then begin again from the date the complaint was filed extending to the date of trial, when the summary annual report was produced. The total amount of the penalty was $12,210. The court also awarded attorneys' fees, but lowered the proposed amount by ten percent to account for its decision to dismiss the individual claims against Gary Bell and Bradley Pollock. The attorneys' fees awarded amounted to $17,355.75.

Following these decisions, Ms. Moothart filed a motion for summary judgment on the abuse of process counterclaim. Bell & Pollock responded, asserting that factual issues precluded the entry of judgment. The district court granted plaintiff's motion, and en-

---

**2.** For example, the letter contained statements such as "[w]here does Linda Moothart currently work? She appears to be hiding. Why?", and "[w]hy do you need an Employee Fringe Benefits Manual for tax planning purposes? This is an unusual request and I question the truthfulness of the reason for the request." Appellee's Supp. App. at 9.

tered judgment on the entire case on April 29, 1993. This appeal followed.

## Discussion

Defendants have raised eight separate claims in this appeal. The issues presented can be grouped, however, into three general areas. First, defendants maintain the district court erred in awarding judgment on the merits under ERISA, in particular because the court misconstrued the penalty statute and failed to consider and apply the doctrines of mitigation of damages and estoppel. They also contend it was error to award attorneys' fees. Second, they argue the court erred when it included Gary Bell and Bradley Pollock individually in the judgment entered, as those claims were dismissed. They contend the district court should have awarded them attorneys' fees for having to defend the lawsuit against the individuals. Finally, they challenge the district court's decision to enter summary judgment on the abuse of process counterclaim. We will address these arguments in turn.

### I

This action was filed under ERISA's disclosure provisions, 29 U.S.C. §§ 1024(b)(4) and 1132(c). These sections were included in ERISA so that plan participants and beneficiaries would be in a position to make informed decisions about how best to protect their rights. *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 153 (3rd Cir.1987) (citing S.Rep. No. 127, 93d Cong., 2d Sess. 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863), *aff'd in part, rev'd in part, on other grounds*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Section 1024(b)(4) provides, in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, ... or other instruments under which the plan is established or operated.

Section 1132(c)(1) is the penalty provision applicable where the court finds a violation of § 1024. It states that an administrator may be liable, in the court's discretion, for penalties of up to $100 per day for the failure to mail the requested materials within thirty days of the request.

In the district court, Ms. Moothart argued that Mr. Finke's letters constituted "written requests" as the term is defined in the statutory scheme, and that the failure to provide the summary plan description and annual reports was a violation of the statute. The defendants maintain the district court erred in accepting this argument because 1) Mr. Finke's last letter stated he would "get back to them" after conferring with his client and they were lulled into believing the request was dropped, and 2) the complaint could not constitute a written request under the statute.

■ An attorney, such as Mr. Finke, is entitled to request plan information on behalf of the participant if the request is clear and puts the administrator on notice of the information sought. *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F.Supp. 1061, 1066 (M.D.Ala.1988), *aff'd*, 891 F.2d 842 (11th Cir.1990). The statute does not specify, however, what form the request must take. A demand for benefits is not a written request. *Pane v. RCA Corp.*, 868 F.2d 631, 639 (3d Cir.1989); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 623 (7th Cir.1987). Likewise, the Fifth Circuit has ruled that a note scribbled at the bottom of a social security award certificate requesting "policies covering my contract for salary continuation" would not be construed as a statutory request for information. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir.1990).

■ Here, defendants maintain that "the court ... ruled that the actions and inactions taken by the Plaintiff led the Defendants to reasonably believe that the matter had been dropped." Appellants' Br. at 24. They argue that Mr. Finke's letters could not, therefore, be written requests. They likewise contend that a complaint cannot constitute a request for information. The argument follows that there was, consequently, no statutory request for information and thus no violation.

The defendants have manipulated, if not misstated, the record in order to advance this argument. The district court held, as a matter of law, that the letters written in February, March, and April of 1989 constituted written requests for plan information.[3] Later, in considering whether to exercise its discretion to impose penalties, the court determined that it would not award them for the period between the date of the last letter and the filing of the complaint because "Mr. Pollock may reasonably have assumed that he had succeeded, perhaps, in stiff-arming [Ms. Moothart], and if he had known to the contrary and if it had been pursued quickly, he might have backed down and furnished the information." Appellants' App.Vol. III at 764. The court did not, as defendants suggest, find that the requests, as a whole, were equivocal.

 The letters which Mr. Finke wrote on February 23, March 14, and April 3 are very clear in their stated purpose. They request specific plan documents. The February 23 letter states:

Ms. Moothart indicated to me that she was a participant in your company's profit sharing plan. She indicated, however, that she did not have a copy of the Summary Plan Description. I would appreciate your providing to me a copy of that Summary Plan Description as well as a copy of the Summary Annual Report.

Appellee's Supp.App. at 6. The request for the documents was repeated in each of the remaining letters. Id. at 7, 8, 18. We agree with the district court that these letters constitute written requests under the statute. Ms. Moothart did, therefore, establish a violation, as defendants have never disputed that they did not forward the plan documents when Mr. Finke made his initial requests.[4]

Furthermore, there is nothing in the record suggesting the district court treated the complaint in this matter as a written request under the statute. Rather, the court appeared to view defendants' noncompliance as a continuing violation, but chose not to award penalties during the period between the date of the last letter and the filing of the complaint. See Appellants' App.Vol. III at 771–73 (discussing ruling on penalty). It was within the court's discretion to do so.

The greatest portion of defendants' brief on appeal is devoted to arguing that the district court erred when it awarded a penalty. Specifically, defendants maintain that Ms. Moothart waived the penalty and that the court abused its discretion in awarding one in any event, because she suffered no injury. After a very careful review of the record, we conclude that the district court did not err.

Section 1132(c) provides that the district court's decision whether to award a statutory penalty is discretionary. Under the abuse of discretion standard:

a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the "abuse of discretion" standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

McEwen v. City of Norman, 926 F.2d 1539, 1553–54 (10th Cir.1991) (quoting United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)). An abuse of discretion occurs when the district court's decision is "arbi-

---

**3.** The district court stated, "[t]he plan administrator is the employer, and that was the person to whom ... Ms. Moothart's representatives addressed their questions, and I find that that was a [sic] sufficient compliance with the statute to trigger the obligation to respond." Appellants' App.Vol. III at 552.

**4.** In the district court, defendants argued vigorously that Ms. Moothart had received the documents sometime prior to Mr. Finke's requests, and, therefore, there was no violation. Ms.

Moothart denied any earlier receipt of the information she requested. The court made no finding on this issue. We note, however, that the statute, by its plain meaning, appears to require production of the plan documents when a valid request is made, regardless of whether some time in the past the participant may have received information about the plan. If, however, a participant abuses her right to request information, it is in the discretion of the court to deny any penalty.

trary, capricious or whimsical," or results in a "manifestly unreasonable judgment." *United States v. Wright,* 826 F.2d 938, 943 (10th Cir.1987). It is with this standard in mind that we approach defendants' arguments.

■ The primary challenge asserted in defendants' appellate brief is that it was unfair to award a penalty because Ms. Moothart, both individually and through counsel, waived any right to a statutory award. Defendants claim they relied to their detriment on this waiver and did not, as a result, conduct appropriate discovery regarding the statutory award. At first blush, this argument would appear compelling. After reviewing the record, however, we cannot help but conclude that no waiver occurred and that defendants are being less than genuine in arguing that it did.

Ms. Moothart requested that the district court award a penalty in her complaint, the pre-trial order, and summary judgment motion. *See* Appellants' App.Vol. I at 2, Vol. II at 263, Vol. I at 157. Thus, the pleadings reveal no uncertainty with respect to her position on this question. Defendants argue, however, that during a hearing on a motion to compel on July 5, 1990, counsel waived the penalty. At that hearing, the court was considering defendants' motion to compel certain discovery. After concluding that the requested discovery was "harassing," *see* Appellants' App.Vol. III at 527, the court queried Ms. Moothart's counsel on what relief the plaintiff was requesting. He responded:

I think the Court's exactly right. I think the remaining relief essentially boils down to attorney fees and costs in the case. We recognize that the information we ultimately asked for the easy way—or Ms. Moothart did—has now been supplied, I guess, the hard way; namely, the summary plan description, and I think it boils down to attorney fees and costs. The Court can determine the penalty in its discretion, but frankly, we're not particularly interested in the penalty at this point.

*Id.* at 529. The court ultimately denied the motion to compel and awarded Ms. Moothart attorneys' fees. In light of the unequivocal nature of the pleadings, and both Ms. Moothart and counsel's statements during hearings and depositions that she was still seeking a penalty, we agree with the district court that this one statement cannot be construed as a waiver.[5]

■ A closer question is whether the district court erred in awarding a penalty up to the date of trial based on defendants' failure to produce a copy of the summary annual report. This report was crucial, as it revealed whether the plan was funded during Ms. Moothart's employment. Defendants maintain they sent a copy of this report in April 1990. Conversely, Ms. Moothart denied ever seeing the report prior to the time of trial.

Defendants claim Ms. Moothart admitted receiving all requested documents prior to trial. Indeed, one of her attorneys, as well as Ms. Moothart herself, stated on the record that they received the documents they had asked for. During the July 5 hearing, counsel for Ms. Moothart told the court it was his understanding that all the documents were received. Appellants' App.Vol. III at 526. That same attorney also stated at the November 14, 1990, pretrial conference that he had received all the documents. *See id.* at 823. Likewise, when queried at her deposition on whether she received all the requested documents, Ms. Moothart responded that she had. *Id.* at 636–37.

In the summary judgment motion filed in October 1990, however, Ms. Moothart stated, "[t]o this date, the Summary Annual Report requested by Mr. Finke in his letters, and also requested by Plaintiff's counsel in discovery in this litigation, has not been produced." Appellants' App.Vol. I at 153. Moreover, counsel for Ms. Moothart subpoenaed the documents again just before trial.

5. In a deposition on August 20, 1990, Mr. Pollock sought to confirm the waiver by asking Ms. Moothart whether she was "aware of the fact that [her] attorneys waived the penalty...." Appellants' App.Vol. I at 85. She responded that she was not aware of any waiver. At the beginning of the deposition, counsel for Ms. Moothart told Mr. Pollock he was incorrect if he assumed the penalty was no longer an issue. Appellee's Supp.App. at 31.

**1506**

The district court ruled, by a preponderance of the evidence, that the annual report was furnished for the first time on April 11, 1991. The court stated,

I find that the summary plan was not furnished on April 6th, by a preponderance of the credible evidence, and I find that for several reasons. Number one, if the summary plan had been furnished, then it was strange that later on, when it became an issue in the briefing and [counsel] said it had never been furnished, that there was not a prompt response or something from the plaintiffs that said, "Oh, yes, we furnished it to you," or a certified letter or something making a record that it was—that it had been furnished and that they were refurnishing it again.

One would have expected that Mr. Bell or Mr. Pollock would have said, "Well, we sent that on April 6th, and I'm sending it again and enclosed is a copy of the letter we sent you on April 6th." That would have been the normal course of events.

. . . .

I am not sure what happened here, but I find by a preponderance of the credible evidence that the documents were not enclosed, and I further find, in support of that finding concerning credibility, I note that at no time during the entire discovery period of this stage when—of this case, when the plaintiff's attorneys were suggesting that they had never received all the documents, did the defendants' attorneys come forward and say, "Well, we furnished these materials not only on April 10th, but on April 6th."

Appellants' App.Vol. III at 766–67. This factual finding is subject to the clearly erroneous standard of review, and, as such, we may not reverse it unless it is without factual support or we have a "definite and firm conviction that a mistake has been made." *Cowles v. Dow Keith Oil & Gas, Inc.,* 752 F.2d 508, 511 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986); *see also Schumacher v. United States,* 931 F.2d 650, 652 (10th Cir.1991) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

The district court's factual determination is not clearly erroneous. It is supported in the record, and we are not convinced it is wrong. Thus, it was not error to consider the violation as continuing up to the date of trial. As a consequence, the decision to award the penalty through April 11, 1991, was not an abuse of discretion. We therefore reject defendants' waiver argument.

We turn now to defendants' argument that the penalty award was improper because Ms. Moothart suffered no injury or prejudice as a result of the failure to provide the documents. The circuits are in general accord that neither prejudice nor injury are prerequisites to recovery under the penalty provisions of the statute. *See, e.g., Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 894 n. 4 (10th Cir.1988); *Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1148 (3d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994), *cert. denied,* — U.S. —, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994); *Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1494 (11th Cir.1993). Instead, these are factors the district court may consider in deciding whether to exercise its discretion to award a penalty. *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 588 (1st Cir.1993).

Here, the district court decided to award the penalty based in part on its assessment that defendants acted in bad faith in their response to Mr. Finke's letters. In addition, the court noted that rather than simply providing the documents and concluding the matter, the defendants were adamant about fighting Ms. Moothart's efforts. The court chose to impose a $30 a day penalty, however, rather than the full $100 allowed under the statute, to reflect the lack of injury and the limited prejudice involved. These decisions are supported in the record. The court did not abuse its discretion.

Finally, we comment on defendants' argument that the district court erred in failing to consider and apply the doctrines of mitigation of damages and estoppel. First, we emphasize that the penalty statute is just that, a penalty. Therefore, mitigation of damages would not apply. *See Daughtrey,* 3

F.3d at 1494 ("section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant"). The focus is necessarily on the plan administrator's actions, not the participant's.

Estoppel is likewise inapplicable. We have already upheld the district court's finding that the annual report was not provided until the day of trial. The defendants knew, or at a minimum should have known, they had not produced the document. Estoppel only applies if "the party asserting the estoppel [is] ignorant of the true facts." *Penny v. Giuffrida*, 897 F.2d 1543, 1545 (10th Cir.1990); *see also Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir.1990); *see also Paul v. Monts*, 906 F.2d 1468, 1474 (10th Cir.1990) (party asserting estoppel must *reasonably* rely on inconsistent conduct) (emphasis added).

Moreover, the burden is on the party asserting the estoppel to show all the elements of the claim. *Monts*, 906 F.2d at 1474. Apart from the allegations raised in defendants' brief, there is nothing in the record to show they detrimentally relied on any alleged inconsistencies in Ms. Moothart's position. They conducted extensive discovery, and were allowed to depose Ms. Moothart for an additional two hours as a result of their stated confusion over the propriety of imposing a penalty. The district court did not err in failing to apply estoppel.

The defendants also maintain it was error to award attorneys' fees. They contend the district court did not consider the appropriate factors in assessing the fees. In addition, defendants argue the court erred when it subtracted only ten percent of the requested fees to reflect the time spent pursuing claims against the individual defendants. The decision whether to award fees is discretionary. 29 U.S.C. § 1132(g). Thus, "[t]o hold that the district court abused its discretion, we must have a definite conviction that the court, upon weighing relevant factors, clearly erred in its judgment." *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir.1983).

As defendants point out, several factors are relevant in determining whether fees are appropriate under ERISA. These include, but are not limited to 1) the degree of culpability or bad faith, 2) the ability of the party to satisfy the award, 3) whether an award of fees would deter others from acting under similar circumstances, 4) whether the party seeking fees sought to benefit all participants of the plan or resolved a significant legal question, and 5) the relative merit of the parties' positions. *Id.* at 109; *see also Downie v. Independent Drivers Ass'n Pension Plan*, 945 F.2d 1171, 1172–73 (10th Cir. 1991).

This is neither an exhaustive nor exclusive list. *See Downie*, 945 F.2d at 1172 ("the district court should consider these factors among others") (quoting *Gordon*, 724 F.2d at 109). Here, for example, the district court placed greater emphasis on its view of the bad faith of the defendants and the merit of their position. In addition, after hearing testimony on the question, the court determined the amount of fees requested was reasonable, including the time spent and hourly rate. Moreover, the court went further than the plaintiff's expert in deciding to lower the requested fees by ten percent to reflect the unsuccessful litigation pursued against the individual defendants. Because we hold the attorneys' fees calculation was not "clearly wrong," we affirm the district court on this issue.

## II

This leads us to defendants' argument that the district court erred when it failed to award attorneys' fees for their efforts in having the individual claims dismissed. After reviewing the record, including but not limited to the court's conclusion that although not successful, the claims against the individual defendants were not frivolous, we see no abuse of discretion in not awarding fees. We will remand, however, as it appears the district court erred when it included the individuals in the judgment entered. There is nothing in the record to indicate this was anything but an oversight, but it is one which should be corrected.

**1508**

### III

■ . The remaining argument involves the entry of judgment on defendants' abuse of process counterclaim. The district court entered judgment pursuant to Fed.R.Civ.P. 56(c). We review this ruling de novo, applying the same standard as the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991).

To prevail in an abuse of process action, defendants must show, "(1) an ulterior motive in the use of judicial proceedings; (2) willful actions by a party in the use of the process which are not proper in the regular conduct of a civil action; and (3) damages proximately caused by (1) and (2)." *Swanson v. Bixler,* 750 F.2d 810, 814 (10th Cir. 1984). We have already determined the district court correctly entered judgment in favor of the plaintiff. Apart from defendants' unsupported allegations of improper motive, there is nothing in the record to suggest plaintiff acted improperly. Therefore, we affirm the entry of summary judgment.[6] *See Thomas v. Wichita Coca Cola Bottling Co.,* 968 F.2d 1022, 1025 (10th Cir.) (noting that to avoid properly supported summary judgment motion, nonmovant must do more than refer to allegations in a brief), *cert. denied,* — U.S. —, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

### IV

The judgment of the United States District Court for the District of Colorado is AFFIRMED, except that the matter shall be REMANDED to the district court for the proper entry of judgment to reflect dismissal of the claims against the individual defen-

dants. Appellee's motion for costs and attorneys' fees on appeal is DENIED.

---

6. Defendants also argue the court relied improperly on documents not received into evidence in granting summary judgment. All of the documents which the court relied on, however, were submitted with plaintiff's original summary judgment motion. Therefore, they were already part of the record.