**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BERNARD OLCOTT,

     Plaintiff - Appellant,

v.

DELAWARE FLOOD COMPANY, a
limited partnership under the laws of
Oklahoma; LAYTON OIL
COMPANY, a Kansas corporation;
DELAWARE FLOOD COMPANY
1976 DH; DELAWARE FLOOD
COMPANY 1977 EH; DELAWARE
FLOOD COMPANY 1978 FH;
DELAWARE FLOOD COMPANY
1979 Ltd.; MICHAEL GALESI;
WILLIAM DOUGLAS LAYTON,
individually and as general partner,

     Defendants - Appellees.

No. 03-5156
(N. District of Oklahoma)
(D.Ct. No. 83-CV-179-E)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This case is before us for the fourth time after a long and tortured history.[1]

Bernard Olcott (Olcott), who was previously awarded sanctions against the

defendants in the amount of $1,526,032.78,[2] together with prejudgment interest in

the amount of $2,573,974.77, all based on a $1.9 million investment turned sour,

appeals the district court's denial of his application for additional sanctions and

costs.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## *I. Background*

The facts germane to this appeal are these.  Between 1976 and 1979, Olcott

invested a total of $1.9 million in four oil drilling and exploration limited

partnerships in Oklahoma.  In 1982, he filed suit in federal court[3] in which he

alleged violations of federal securities law and various state claims based on tort,

fraud and breach of contract.[4]  As defendants, he named Delaware Flood

---

[1] *See Olcott v. Delaware Flood Co.,* 327 F.3d 1115 (10th Cir. 2003) (*Olcott III*);
*Olcott v. Delaware Flood Co.,* 76 F.3d 1538 (10th Cir. 1996) (*Olcott II*).  *Olcott I* was an
unpublished order in which we remanded to correct statute of limitations problems.  *See*
*Olcott II,* 76 F.3d at 1543.  *Olcott II* and *Olcott III* provide additional background to the
instant appeal.

[2] This consists of $449,018.08 in fees and expenses and default judgment in the
amount of $1,077,014.70.

[3] Olcott originally filed suit in the District of New Jersey.  Applying the *forum non*
*conveniens* doctrine, *see* 28 U.S.C. § 1404, the court transferred the case to the Northern
District of Oklahoma.

[4] The district court eventually dismissed the federal claims as barred under the
applicable statute of limitations, dismissed a number of Olcott's pendent state claims on
summary judgment and entered default judgment on the remaining state claims alleging

Company and others (Delaware Flood). The gist of Olcott's complaint was that Delaware Flood had diverted his investment to purposes other than those stated in the limited partnership agreements. On February 8, 1986, he moved the court to order Delaware Flood to produce a formal accounting of his investment. On March 18, 1986, the court ordered Delaware Flood to:

> furnish [Olcott] with a full, complete, meaningful, and formal accounting of all of the financial affairs of [the four limited partnerships], setting forth all items of contribution, income, and expense as well as the disposition of all assets and monies, for each of the four limited partnerships, including a full and complete accounting for all monies paid by each of the partnerships under the turnkey drilling contracts . . . .

*See Olcott II,* 76 F.3d at 1550-51.

Delaware Flood submitted its accounting on January 13, 1987. Olcott complained it was insufficient and moved for sanctions, including entry of default judgment. The court agreed the accounting was insufficient. Although it declined to enter default judgment against Delaware Flood, finding no bad faith, it imposed sanctions against it on March 17, 1987, under FED. R. CIV. P. 37:[5]

2. [Delaware Flood] shall pay all costs and fees incurred by

---

fraud and breach of contract. *See Olcott III,* 327 F.3d at 1120, 1126.

[5] "If a party . . . fails to obey a . . . pretrial order . . ., the judge . . . may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." FED. R. CIV. P. 16(f). "[T]he court . . . may make such orders in regard to the failure [to discover] as are just, and among others the following: . . . (C) . . . rendering a judgment by default against the disobedient party[.]" FED. R. CIV. P. 37(b)(2)(C).

[Olcott] from December 19, 1986 regarding the accounting issues until all accounting issues are resolved . . . .

5. [Olcott] shall file an application for costs and fees to date within ten (10) days of March 17, 1986 . . . .

6. . . . . Statements for subsequent services may be rendered to the Court thereafter as appropriate.

(Appellant Supp. App. Vol. I at 11-11a.)  The order directing Delaware Flood to produce an accurate accounting remained in effect.

On May 12, 1987, Delaware Flood filed its first supplemental accounting. Olcott complained it, like the previous accounting, was insufficient.  Again, he sought sanctions, including entry of default judgment.  Again, the court agreed the accounting fell short of the mark.  On October 14, 1987, relying on FED. R. CIV. P. 16 and 37(b), the court sanctioned Delaware Flood a second time. Although the court again declined to enter default judgment, due to insufficient evidence of bad faith, it ordered Delaware Flood to pay the fees and expenses Olcott incurred in challenging the accounting.[6]  The accounting order remained in

---

[6] "[I]t is just that [Delaware Flood] pay all fees and expenses of [Olcott's] counsel and [Olcott's] accountants incurred for services rendered in connection with resolving the sufficiency of the accounting." (Appellant Supp. App. Vol. I at 17.)  Also, "[Delaware Flood] shall bear the cost of [Olcott's] attorney fees, accountant's fees, and expenses incurred in connection with resolution of the sufficiency of the accounting . . . ." (*Id.* at 20.)  For reasons we need not divine, the court later averred in an order filed April 30, 1993, that "all orders prior to October 14, 1987, which touch on the accounting issues were not sanction orders and are, therefore, not under consideration herein." (Appellant App. Vol. 1 at 177 n.2.)  We therefore conclude the court's October 14, 1987 sanction order covered fees and expenses incurred by Olcott from the beginning of the dispute

-4-

effect, the court explaining:

> So that there can be no further misunderstanding, [Delaware Flood is] hereby ordered to trace the monies contributed to each of these four limited partnerships so that the ultimate recipients and ultimate uses of these funds is revealed. [Delaware Flood] may not rest on simply disclosing what funds were received from limited partner contributions and what leases, wells, production, and income were received by the limited partnerships in return.

(Appellant Supp. App. Vol. I at 16.)

The court referred the calculation of fees and expenses to a magistrate judge. On July 28, 1988, the magistrate judge recommended a sanction award to Olcott in the amount of $386,637.98 for fees and expenses incurred between December 19, 1986, and October 14, 1987.[7] On August 29, 1988, the magistrate judge recommended an additional $1,615.00 for fees and expenses Olcott incurred. Thus, the total sanction recommended by the magistrate judge was $388,252.98.

On April 15, 1988, Delaware Flood filed its second supplemental accounting. Again, Olcott contested its sufficiency and moved for sanctions, including entry of default judgment. This time, the court found Delaware Flood wilfully violated its order to produce an accurate accounting and demonstrated

---

over the accounting and superceded the court's order of March 17, 1987.

[7] Olcott had requested approximately $400,000.00 in fees and expenses.

bad faith.  On February 8, 1990, it sanctioned Delaware Flood by entering default[8]

against it, *see* FED. R. CIV. P. 55(a), for $1.9 million

> less any portion of those funds which [Delaware Flood] can establish
> were utilized for legitimate purposes under the terms and provisions
> of the Limited Partnership Agreements.  There will be a [set-off
> hearing] at which the burden will be upon [Delaware Flood] to
> establish to the satisfaction of the fact finder that any portion of
> [Olcott's] contribution was utilized for legitimate purposes under the
> terms of the agreements among the parties.

(Appellant App. Vol. 1 at 171.)  The court reserved until the end of the set-off

hearing the issue of additional sanctions in favor of Olcott for fees and expenses.

The order for an accurate accounting remained in effect pending the set-off

hearing.  In fact, the court ordered a supplemental accounting be produced by

May 31, 1990.  Although Delaware Flood submitted such an accounting, the

---

[8] The district court mischaracterized its order of February 8, 1990, as an entry of default judgment against Delaware Flood.  As we pointed out in *Olcott III,* "the [district] court had not previously entered a default judgment pursuant to Fed.R.Civ.P. 55(b), but had entered an order of default pursuant to Fed.R.Civ.P. 55(a).  The proceeding to quantify damages was not a trial but a hearing pursuant to Fed.R.Civ.P. 55(b)(2)." 327 F.3d at 1120 n.6 (quotations omitted).

> The set-off hearing was [Delaware Flood's] final opportunity to comply
> with the court's accounting orders.  In the event [Delaware Flood] complied,
> the court presumably intended to lift the default sanction and proceed to
> trial on the merits.  *See* Fed.R.Civ.P. 55(c).  When [Delaware Flood] failed
> to comply, the court enforced the sanction by entering judgment.  *See*
> Fed.R.Civ.P. 55(b).

*Id.* at 1121 n.7.

court's own expert examined the submittal and reported to the court on September 26, 1990, that it was entirely insufficient.

On April 30, 1993, the court adopted the two recommendations of the magistrate judge (July 28, 1988, and August 29, 1988) and ordered Delaware Flood to pay sanctions to Olcott in the amount of $388,252.98 for the period December 19, 1986, through October 14, 1987. We affirmed the imposition of these sanctions. *Olcott II,* 76 F.3d at 1558.

The court eventually conducted the set-off hearing on August 29 through September 1, 2000. On June 6, 2001, the court ruled. It found "[Delaware Flood has] failed to render an accounting and [has] not accounted for the specific use of Mr. Olcott's moneys." (Appellant App. Vol. 1 at 268.) The court considered the parties' stipulation at the set-off hearing that Olcott received $623,161.00 in distributions from the partnerships.[9] In addition, the court found Olcott enjoyed a net benefit of $199,824.30 for the exercise of a "put" relative to the 1977 partnership. The court thus concluded Olcott was entitled to default judgment in the amount of $1,077,014.70. It entered judgment in this amount, *see* FED. R. CIV. P. 55(b), plus prejudgment interest. On January 29, 2002, the court fixed

---

[9] Olcott complains the figure of $623,161.00 was available as early as March 1987. Even so, it was only after much testimony on the issue and on the last day of the set-off hearing that the parties agreed to stipulate that Delaware Flood was to be credited with $623,161.00 in distributions from the partnerships.

pre-judgment interest at $1,679,144.55[10] and awarded additional attorneys fees in the amount of $60,765.10 relative to the period December 19, 1986, through October 14, 1987.[11]

In its June 6, 2001 order, the court also provided: "Consistent with the terms of the February 8, 1990 Order, any additional sanctions for fees[,] expenses and costs will be addressed separately upon proper application or motion." (Appellant App. Vol. 1 at 269.) On October 1, 2001, Olcott applied for fees, expenses and costs incurred between October 15, 1987, and June 6, 2001, in relation to resolving the sufficiency of Delaware Flood's accounting. In his application, relying alternatively on the court's earlier sanction orders (March 18, 1987, and October 14, 1987) and FED. R. CIV. P. 16(f) and 37(b), he requested a $562,329.00 sanction for fees and expenses for the period October 15, 1987, through June 6, 2001. He also applied for costs of $48,544.00 pursuant to FED. R. CIV. P. 54(d)(1) (allowing award of costs to prevailing party).[12] He also requested

_____

[10] Pursuant to *Olcott III's* mandate to calculate prejudgment interest according to New Jersey law rather than Oklahoma law, the court on remand adjusted this award to $2,573,974.77. *See Olcott III,* 327 F.3d at 1126.

[11] On March 30, 1989, the magistrate judge recommended an award of an additional $60,765.10 to Olcott for attorneys fees relative to preparing his initial fee application.

[12] Of this sum, only $601.50 was not included in his sanction request of $562,329.00. In the alternative, he requested sanctions in the amount of $562,931.00 (a figure arrived at by adding the $601.50 in costs to his $562,329.00 sanction request and rounding up to the nearest dollar).

sanctions under FED. R. CIV. P. 11 (providing for attorney sanctions). In resisting

Olcott's application, Delaware Flood moved for Rule 11 sanctions of its own.

On September 2, 2003, the court denied Olcott's application for additional

sanctions and costs and denied Delaware Flood's motion for sanctions, stating:

> The Court is convinced that further sanctions in this case, in favor
> of either party, are not warranted and would not serve the interest
> of justice. In reaching this conclusion, the Court considers not
> only the considerable sanction received by [Olcott] to date, but
> also the conduct of [Olcott's] counsel that delayed resolution of
> the case and made the [set-off hearing] more difficult than
> necessary. The Court is convinced that the sanctions already
> levied are a sanction appropriate to the severity of [Delaware
> Flood's] abuse of the legal process, and that any further sanction
> would inappropriately reward, or at best ignore, [Olcott's]
> counsel's abuse of the legal process. The Court is also convinced,
> in light of its earlier rulings on sanctions, that a Rule 11 sanction
> is not appropriate as against [Olcott] for his current application.

(Appellant Supp. App. Vol. III at 377-78 (quotation marks omitted).) Olcott

appeals this order except insofar as it denies Rule 11 sanctions against Delaware

Flood.

### II. Standard of Review

We review an order imposing sanctions pursuant to FED. R. CIV. P. 16(f) or

37(b)(2) for abuse of discretion. *Olcott II,* 76 F.3d at 1557. The same standard

applies to an order denying sanctions. *Gomez v. Martin Marietta Corp.,* 50 F.3d

1511, 1519 (10th Cir. 1995). We also review an award or denial of costs under

FED. R. CIV. P. 54(d) for abuse of discretion. *Rodriguez v. Whiting Farms, Inc.,*

360 F.3d 1180, 1190 (10th Cir. 2004).  We have previously stated:

> Under the abuse of discretion standard[,] a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.  When we apply the abuse of discretion standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 1994) (quotation marks omitted).  "An abuse of discretion occurs when the district court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Id.* at 1504-05 (quotation marks omitted).

 "[E]rroneous findings of fact constitute an abuse of discretion."  *Quarles v. United States ex rel. Bureau of Indian Affairs,* 372 F.3d 1169, 1171 (10th Cir. 2004).  *See also Olcott II,* 76 F.3d at 1557 ("We accept the district court's factual findings underpinning its sanctions order unless clearly erroneous.").  There is also an abuse of discretion "where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."  *Ohlander v. Larson,* 114 F.3d 1531, 1537 (10th Cir. 1997).  However, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Olcott II,* 76 F.3d at 1558 (quotation marks omitted).

### III. Discussion

We first observe that this appeal concerns the propriety of the district court's order denying sanctions (and Rule 54(d) costs) to Olcott, and nothing more. It does not concern the sufficiency of Delaware Flood's accounting. That issue is a dead letter. The accounting was insufficient and its insufficiency was the basis for the district court's judgment against Delaware Flood. We have previously affirmed the court's determination that "the accounting presented was not in substantial compliance with the court's prior orders." *Olcott III,* 327 F.3d 1125.

Olcott complains the court's order denying an additional sanction award rested on inadequate factual findings and is thus clearly erroneous and an abuse of discretion. In addition, he claims a due process entitlement to a sanction award based on the court's earlier orders that he was entitled to sanctions for his fees, expenses and costs related to contesting the sufficiency of Delaware Flood's accounting. Finally, he argues the court erred in failing to properly rule on his motion for costs under FED. R. CIV. P. 54(d).

### A. Sanctions Under FED. R. CIV. P. 16(f) and 37(b)(2)

Olcott takes issue with the district court's findings in support of its decision to deny sanctions for the period of October 15, 1987, through June 6, 2001. The findings upon which the court relied in arriving at its decision were: 1)

"the considerable sanction received by [Olcott] to date" and 2) "the conduct of [Olcott's] counsel that delayed resolution of the case and made the trial more difficult than necessary." (Appellant Supp. App. Vol. III at 377.) Reasoning from these findings to its decision, the court explained it was "convinced that the sanctions already levied are a sanction appropriate to the severity of [Delaware Flood's] abuse of the legal process, and that any further sanction would inappropriately reward, or at best ignore, [Olcott's] counsel's abuse of the legal process." (*Id.* at 377-78 (quotation marks omitted).) It concluded that "further sanctions in this case, in favor of either party, are not warranted and would not serve the interest of justice." (*Id.* at 377.)

We first evaluate the findings of fact for clear error. The first fact the court found, the considerable sanctions previously awarded to Olcott, is amply supported by the record. The most significant of the sanctions was the default judgment itself (together with prejudgment interest). When the court awarded default judgment as a sanction, Olcott was relieved of having to prove his case on the merits. This is no mean benefit, even for one who, like Olcott, clearly believes the rectitude of his case was self-evident from the beginning. Nonetheless, Delaware Flood, absent its self-defeating abuse of the legal process, would have enjoyed the right to have the claims against it considered on the merits. In addition to a default judgment, the court awarded Olcott a sanction for

-12-

fees and expenses in an amount close to what he now claims as his due.[13] We identify no error in the court's finding that it levied considerable sanctions against Delaware Flood.

The second fact the court found, "the conduct of [Olcott's] counsel that delayed resolution of the case and made the trial more difficult than necessary[,]" invites closer scrutiny.[14] (*Id.*) Olcott claims there is no support in the record for it. However, the record of the set-off hearing, both standing alone and insofar as it is emblematic of Olcott's conduct throughout the litigation,[15] is damning to his

---

[13] Assuming Olcott's recent application for $562,329.00 is compensable at face value, this would mean he has already been awarded forty-four percent of his fees, expenses and costs.

[14] In our view, when the district court singled out the conduct of "[Olcott's] counsel" it was referring to counsel in his representative capacity. As such, the conduct of Olcott's counsel is attributed to Olcott. As the court stated during the set-off hearing, "[T]here has been over $2 million spent in this case on attorneys' fees involving a controversy of 1.9. That disturbs me for the process. The ill feeling between [Olcott] and [Delaware Flood] that has been demonstrated has poured over to the lawyers, and I regret it." (Appellant App. Vol. 2 at 445-46.) Viewing the record as a whole, we conclude it was appropriate for the district court to attribute the conduct of Olcott's counsel to Olcott.

[15] Delaware Flood cites in its brief to forty-nine instances in the docket it claims illustrate Olcott's penchant to delay the proceedings. (*See* Appellee Br. at 4-5.) A bare docket entry, without more, does not suggest abuse of the legal process. On the other hand, we are confident the district judge placed Delaware Flood's record of obstructionism and the conduct of Olcott's counsel at the set-off hearing in the context of the entire history of the case in arriving at its conclusion both parties abused the legal process.

claim he did not abuse the process.[16] The transcript is riddled with examples of argumentative and improper conduct on the part of Olcott's counsel. Brevity and clarity restrain a detailed elaboration. Suffice it to say, Olcott's counsel's conduct was plainly exasperating to the presiding judge.[17] It dispels any notion of

---

[16] We remind Olcott that in finding he abused the legal process, the district court was not exonerating Delaware Flood of like behavior. Nor do we. Indeed, it was Delaware Flood's record of obstructionism (which we need not detail here) that resulted in enormous sanctions of $1,526,032.80 (plus $2,573,974.77 in pre-judgment interest). By comparison, Olcott was not sanctioned and was only denied sanctions of $562,329.00.

[17] At the conclusion of the four day set-off hearing, the court, in declining to impose sanctions against Olcott's counsel, summarized its view of the proceedings:

> And I will address one further issue: The issue of sanctions that had been requested by [Delaware Flood] against [Olcott]. Also the issue of counsel's conduct before the Court.
>
> And I will simply state to Mr. Feinsilver that only on two other occasions, in the last 21 years, has my temperament been affected in the way that it has been in these proceedings. It has been so destructive to the process and so against what I believe to be conduct of counsel, that it causes great concern to the Court.
>
> What really bothers me is that you would leave the Northern District of Oklahoma with the mistaken impression that would confuse courtesy with weakness because that's a misconcept [sic].
>
> I am not going, I am not going to impose any sanction. I'm not going to charge you with any money that you would have to the [sic] pay by reason of your conduct.
>
> But I would hope that you would remember this event and your appearance and that in the future, when you appear before any judge, you will watch the expression on your face, you'll not raise your voice and shout, and conduct yourself as a professional. That's what I would hope.

error in the court's finding.

In an attempt to divert attention from his conduct, Olcott points the finger at Delaware Flood and the court itself. In his view, the district court erred in failing to enter default judgment in his favor on February 8, 1990. He maintains that all of the evidence necessary to support entry of judgment on June 6, 2001, was available to the court on February 8, 1990, including proof of the set-off to which Delaware Flood eventually stipulated ($623,161.00 in distributions from the partnerships) and proof of the net benefit Olcott enjoyed from the exercise of a "put" relative to the 1977 partnership ($199,824.30). He faults the court for permitting the parties to drag the proceedings on for eleven additional years at great expense to him. As he colorfully puts it, "the District Court required [him] to proceed as an involuntary 'hostage' to the process that [defendants] 'hijacked' in 1986 in bad faith." (Appellant Br. at 52.)

We have previously suggested why the court, having entered default against Delaware Flood in 1990, gave it one last chance to render an accurate accounting of Olcott's investment. *See Olcott II,* 76 F.3d at 1558 ("The purpose of the [entry

---

> I hope you have gained some understanding about that. If you have not, there's no amount of money sanctions that I can impose on you that would make that change. So that matter is resolved in my mind.

(Appellant App. Vol. 2 at 809-10.)

of default] was to coerce [Delaware Flood] into completing the accounting for trial."); *Olcott III,* 327 F.3d at 1121 n.7 (10th Cir. 2003) ("The set-off hearing was [Delaware Flood's] final opportunity to comply with the court's accounting orders. In the event [Delaware Flood] complied, the court presumably intended to lift the default sanction and proceed to trial on the merits. When [Delaware Flood] failed to comply, the court enforced the sanction by entering judgment.") (citations omitted). While Olcott may take issue with the manner in which the trial court managed the case, and its strategy in doing so, this is the court's prerogative.[18]

In reviewing a Rule 16(f) or 37(b)(2) sanction order, "we examine the totality of the circumstances involved in the case." *Olcott II,* 76 F.3d at 1557. The sanctions "must be in the interests of justice and proportional to the specific

---

[18] We hasten to add the delay of eleven years in conducting the set-off hearing is explained by more than abuse of the legal system by the parties. The hearing was originally set for August 20, 1990. However, Delaware Flood filed a motion to dismiss Olcott's federal claims on the grounds they were barred by the statute of limitations. On September 25, 1991, the district court granted the motion. In an unpublished order, we reversed and remanded. *See Olcott II,* 76 F.3d at 1542-43. On remand, Delaware Flood renewed its motion to dismiss the federal claims, which the district court granted. In a February 26, 1996 decision, we reversed and remanded. *Id.* at 1549. The scarcity of docket activity between 1990 and 1996 with respect to the set-off hearing is explained by our observation that "[a]fter the court dismissed Mr. Olcott's cause of action, the [entry of default] became moot because the court's decision abrogated the possibility of a trial." *Id.* at 1558. On remand, the set-off hearing was reset for February 9, 1998. By our count, it was reset ten times, once by joint motion, three times on Delaware Flood's motion, four times at the court's instance and twice on Olcott's motion (the second time on the eve of the date the hearing finally commenced).

violation of the rules." *Id.* Examining the totality of the circumstances presented in this case, we conclude the facts found by the district court, in which we find no error, amply support its reasoning and decision that further sanctions were "not warranted and would not serve the interest of justice." (Appellant Supp. App. Vol. III at 377.) The district court has labored long in this vineyard. We are loath to substitute our judgment, drawn from a cold record, for that of the trial judge informed by events and tenured by time. Instead, we are mindful of our responsibility to "defer to the trial court's judgment because of its first-hand ability" to assess the proceedings over which it presides. *Moothart,* 21 F.3d at 1504 (quotation marks omitted). Applying these principles to the facts, we conclude the district court did not abuse its discretion in denying additional sanctions to Olcott.

**B. Due Process Violation**

Olcott contends he has been denied his right to procedural due process inasmuch as the court deprived him of a protected interest, to wit, his alleged entitlement to a sanction award, without notice and an opportunity to be heard. To make out a Fifth Amendment due process claim, an individual must "prove that he or she was deprived of a protected interest and that the deprivation occurred without the appropriate level of process." *Fed. Lands Legal Consortium v. United States,* 195 F.3d 1190, 1195 (10th Cir. 1999) (quotation marks omitted).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972) (stating requirements for Fourteenth Amendment due process claim). We need not reach the constitutional question because Olcott did not possess an entitlement, constitutional or otherwise, to prospective sanctions. Olcott contends the court's orders of March 17, 1987, October 14, 1987, February 8, 1990, and June 6, 2001, vested in him an entitlement to sanction awards for fees and expenses incurred until the conclusion of the litigation over the sufficiency of the accounting. This is not so.

While the March 17, 1987 order stated that "[Delaware Flood] shall pay all costs and fees incurred by [Olcott] from December 19, 1986 regarding the accounting issues until all accounting issues are resolved[,]" (Appellant Supp. App. Vol. I at 11), suggesting entitlement to sanctions for the entire period until the sufficiency of the accounting was resolved,[19] the court later disavowed it as a sanction order. *See supra* note 6. Therefore, the operative sanction orders were those of October 14, 1987, February 8, 1990, and June 6, 2001. None of these

---

[19] We need not and do not decide whether it is possible, under any circumstances, for a litigant to be vested with an entitlement to prospective sanctions. Nor do we decide whether language of the kind included in the March 17, 1987 order establishes such an entitlement, of constitutional dimension or otherwise.

orders contains prospective language, and only the order of October 14, 1987, actually fixes a sanction award.[20] It provided: "[I]t is just that [Delaware Flood] pay all fees and expenses of [Olcott's] counsel and [Olcott's] accountants *incurred* for services rendered in connection with resolving the sufficiency of the accounting." (*Id.* at 17 (emphasis added).) The February 8, 1990 order provided: "The issue of *additional* sanctions for fees, expenses and costs are *reserved* until completion of trial." (Appellant App. Vol. 1 at 171 (emphasis added).) The June 6, 2001 order stated that "any *additional* sanctions for fees[,] expenses and costs *will be addressed* separately upon proper application or motion." (*Id.* at 269 (emphasis added).) Without language awarding prospective sanctions, there is no entitlement, constitutional or otherwise. Without an entitlement, there can be no deprivation subject to constitutional protection.

### C. Costs Under FED. R. CIV. P. 54(d)

Finally, Olcott contends the district court abused its discretion in failing to explain its reasons for denying his motion for Rule 54(d) costs. We have explained how we analyze Rule 54(d) claims:

> Rule 54 creates a presumption that the district court will award the prevailing party costs. Thus the established rule is that costs are generally awarded to the prevailing party. The burden is on

---

[20] Olcott contends that after the order of October 14, 1987, all that was left for the court was to fix, from time to time, the amount of sanctions due him, not his entitlement to those sanctions.

-19-

the non-prevailing party to overcome this presumption. When a district court exercises its discretion and denies costs to a prevailing party, it must provide a valid reason for the denial.

*Rodriguez,* 360 F.3d at 1190 (citations omitted).

In the district court, Delaware Flood opposed Olcott's motion for costs on the grounds he was not a prevailing party and, even if he was, he was not entitled to costs. While Delaware Flood has not in any great detail addressed on appeal the issue of Rule 54(d) costs, we construe its arguments in opposition to sanctions as its argument against costs as well. And while the district court did not separately outline its reasons for denying the motion, we construe the reasons it gave for its denial of the sanctions application as intended to also serve as the basis for its denial of the Rule 54(d) motion.

We need not reach the question whether Olcott was a prevailing party because, even if he was, the court did not abuse its discretion in denying him costs. We observe that all but $601.50 of the Rule 54(d) motion was included in Olcott's application for sanctions. The district court appropriately denied those costs for the reasons we have already explained in the sanctions discussion. As to the $601.50, the court's reasoning in denying sanctions equally serves to deny this sum.

### *IV. Conclusion*

The order of the district court denying additional sanctions and costs to

Olcott is AFFIRMED.[21]

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[21] We decline to consider Delaware Flood's motion, stated in one sentence on Page 9 of its brief, demanding fees and costs on appeal on the ground Olcott's appeal is frivolous.  Rule 38 of the Federal Rules of Appellate Procedure requires such a motion be separately filed.  It was not.