**In re SOUTHERN MEDICAL ARTS COMPANIES, INC., formerly doing business as Pathchor, Inc., doing business as Southwest Medical Holdings, Inc., Debtor.**

**Aaron J. Korngold and Healthcare Acquisitions, Inc., Appellants,**

**v.**

**Janice Loyd, Trustee, Plaintiff— Appellee,**

**and**

**Foxglove, Inc., Defendant—Appellee.**

**BAP No. WO–05–116.**
**Bankruptcy No. 00–18635–WV.**
**Adversary No. 01–1122–WV.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

June 5, 2006.

Submitted on the briefs: * John A. Burkhardt of Boone, Smith, Davis, Hurst & Dickman, Oklahoma City, Oklahoma, for Appellants.

James A. Bellingham of Bellingham, Collins, & Loyd, P.C., Tulsa, Oklahoma, for Plaintiff—Appellee.

Jackie L. Jill, Jr. of Dunn, Swan, & Cunningham, P.C., Oklahoma City, Oklahoma, for Defendant—Appellee.

Before McFEELEY, Chief Judge, NUGENT, and BROWN, Bankruptcy Judges.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

OPINION

MCFEELEY, Chief Judge.

Creditor/Appellants Aaron J. Korngold and Healthcare Acquisitions, Inc., (hereinafter referred to jointly as "Korngold"), appeal from an order of the bankruptcy court for the Western District of Oklahoma which authorized the trustee to enter into a settlement with Creditor/Defendant/Appellee Foxglove. Korngold argues that the bankruptcy court erred for the following reasons: (1) the bankruptcy court did not have subject matter jurisdiction to approve the settlement; and (2) the settlement was not fair and equitable because it was not in the best interests of the creditors. For the following reasons, we affirm.

## I. Background

On October 26, 2000, Debtor Southern Medical Arts Companies, Inc. ("SMACI") along with its wholly owned subsidiaries Medical Arts Laboratory Inc. ("MALI") and Southern Medical Arts Laboratory, Inc. ("SMALI") filed proceedings under Chapter 11. The bankruptcy court granted an application by SMACI for joint administration of all three cases. On March 25, 2002, the cases were converted to Chapter 7. Janice D. Loyd ("Trustee") was appointed Trustee of all three estates.

Subsequently, SMALI paid 100% on all creditors' claims and its case was closed. This appeal involves MALI and SMACI.

The MALI estate had almost 4.7 million dollars in assets. In contrast, SMACI's assets were primarily valueless stock in MALI. SMACI also had an interest in a

life insurance policy on a previous employee, Dr. Lynn B. Moon ("Moon policy"). At some time during the bankruptcy, Foxglove began to pay the Moon policy premiums. Foxglove is an Oklahoma corporation that is a creditor of MALI and SMACI. Its principals are Christopher and Meg Salyer ("Salyers").

Foxglove filed a claim of approximately 4.2 million dollars in the MALI case, asserting a security interest in the MALI accounts receivable and other assets. This claim was based on loans Foxglove made to the SMACI companies. The Trustee initiated an adversary proceeding against Foxglove, arguing that Foxglove's security interest in the MALI accounts receivable was unperfected.[1] The bankruptcy court granted summary judgment on the Trustee's complaint. Foxglove appealed to this Court ("summary judgment appeal").

On April 6, 2005, the Trustee entered into a Settlement Agreement with Foxglove ("Settlement"). The Trustee filed a Motion to Compromise Controversy on April 7, 2005, seeking to resolve all claims and any potential claims the Trustee had against Foxglove and the Salyers ("Compromise"). The Motion was erroneously filed in the adversary proceeding that was on appeal before this Court instead of in the administratively consolidated Chapter 7 case. At the time the Trustee filed the Compromise, Foxglove simultaneously filed with this Court an Application to Administratively Suspend Appellate Proceedings Pending Approval of Compromise of Controversy. On April 13, 2005, this Court entered an order granting the Application and ordering Foxglove to notify this Court when the bankruptcy court had ruled on the Compromise.

The terms of the Compromise are as follows: (1) Foxglove was allowed an unsecured claim of 2.5 million dollars; (2) Foxglove would dismiss the summary judgment appeal; (3) the Trustee would release all claims or potential claims of the Trustee against Foxglove and the Salyers; (4) the SMACI bankruptcy estate would disclaim any rights, title, or interest in the Moon policy in favor of Foxglove. Ultimately, the Compromise was to result in a 60% distribution to all creditors of the MALI estate. In contrast, the SMACI creditors were to receive nothing.[2]

Creditors Korngold and Andrews Davis objected to the Compromise. Korngold is a creditor of SMACI and MALI; however, most of his claim is against SMACI. Andrews Davis had a claim against SMACI; however, the bankruptcy court disallowed this claim.[3]

Both Korngold and Andrews Davis argued that notice of the Compromise was improper because notice went only to the creditors of MALI and not the creditors of SMACI. Next, they made two arguments against the Compromise. First, they argued that the Compromise was improper because the Trustee should have initiated a proceeding against Foxglove to equitably subordinate or reclassify Foxglove's claims. Their second argument focused on the Moon policy.

---

1. Foxglove claimed a perfected security interest on two bases: (1) it claimed it had a perfected interest by virtue of a filing that had been made by one of its agents; (2) it claimed it had a perfected interest by virtue of a filing Foxglove made within ninety days of bankruptcy. The first the bankruptcy court found invalid; the later was avoided.

2. Under the Compromise, some SMACI creditors would receive payment on their claims to the extent that SMACI had joint and several liability with MALI on those claims.

3. Ultimately, the bankruptcy court found that Andrews Davis had no standing to object to the Compromise. This ruling is the subject of BAP Appeal No. WO–05–117.

As previously mentioned, the Moon policy was an asset of the SMACI estate. While the Trustee was administering the estates, she continued to pay the premiums on the Moon policy. At some time before the settlement, the Trustee determined that it was no longer of benefit to the estate to pay the premiums on the Moon policy; this decision was based, in part, on the fact that the premiums were to significantly increase. Foxglove began to pay the premiums on the policy. During the initial settlement negotiations, the policy was assigned a $10,000 value. Before the settlement was finalized, Dr. Moon died. The insurance company paid approximately $560,000 to Foxglove. The Trustee let the original Settlement stand and assigned the policy to Foxglove under the Compromise.

The motion to enter into the Compromise was heard June 22 and 23, 2005. On October 12, the court orally approved the Settlement, concluding that it was fair and equitable.

Subsequently, the court entered its Order on October 14, 2005. The Order was final within the meaning of 28 U.S.C. § 158(a) because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). This appeal timely followed. *See* Fed. R. Bankr.P. 8001. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. Discussion

As an initial matter, Korngold argues that the bankruptcy court did not have subject matter jurisdiction to approve the Compromise. This argument turns on the fact that the Compromise was erroneously filed in the adversary case and not in the administratively consolidated main case. Because the bankruptcy court had entered a summary judgment in the relevant adversary case and the summary judgment was on appeal before this Court, Korngold argues that the bankruptcy court had no jurisdiction to decide any matters filed in the adversary case.

■■■■ Upon the filing of a notice of appeal, a bankruptcy court loses jurisdiction over all matters within the subject matter of the notice of appeal. The "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). This rule applies to appeals of bankruptcy proceedings. *In re Hagel*, 184 B.R. 793, 798 (9th Cir.BAP1995). Whether a bankruptcy court has subject matter jurisdiction is an issue of law that we review *de novo*. *See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1095 (10th Cir.2003).

■■■■ Under this rule, a bankruptcy court loses jurisdiction only over those aspects of a case involved in an appeal. Here, the summary judgment appeal is distinct and separate from the issue of whether a compromise may be reached between a creditor and a trustee. While it is true that the Compromise was filed in the adversary case and there was an appeal pending of the judgment in that case, the mistake in filing did not divest the bankruptcy court of subject matter jurisdiction over the Compromise. Because the Compromise is a separate aspect of the

case, the bankruptcy court had jurisdiction to rule on the Compromise.

Next, Korngold argues that the bankruptcy court erred when it approved the Compromise for the following reasons: (1) notice of the Compromise did not go to all the creditors; (2) notice was improper because it did not reflect the contents of the Compromise; (3) the Compromise was not fair and equitable. We will address each argument in turn.

The procedure for approving a compromise or settlement is found in Federal Bankruptcy Rule of Procedure 9019(a), which provides in pertinent part:

> On motion by the trustee after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Under Federal Rule of Bankruptcy Procedure 2002(a)(3), all parties in interest must receive twenty days notice "unless the court for cause shown directs that notice not be sent[.]" However, notice may be limited by the court if the court so orders. Fed. R. Bankr.P.2002(i), (m).

Korngold argues that the bankruptcy court erred in ruling on the Motion because all SMACI creditors did not receive notice and therefore, notice was improper. When considering Korngold's argument in the hearing below, the bankruptcy court concluded that all appropriate creditors did receive notice. We agree.

Korngold's argument is premised on the assumption that only the parties who were to receive notice in the MALI adversary case actually received notice of the Compromise. However, the record indicates that notice of the Compromise went to a notice matrix established in the jointly administered main case under an Order Limiting Notice entered by the bankruptcy court on October 25, 2000. Pursuant to that order, notice was limited to, among others, the twenty largest unsecured creditors and all secured creditors in each of the jointly administered cases. Transcript of Hearing at 14, *in* Appellants' Appendix at 203. As reflected in the record, the Trustee sent notice to all creditors on that matrix. Therefore, all creditors entitled to receive notice of the Compromise did receive notice.

■ Korngold also argues that notice was improper because it failed to include all relevant terms of the Compromise. While Korngold is correct that the notice does not include all relevant terms of the Compromise, the record reflects that any potential defects in the notice were cured by the fact that the Motion was accompanied by a copy of the proposed settlement. *Id.* Therefore, all creditors entitled to notice also had access to all terms of the Compromise.

Next, Korngold argues that the bankruptcy court abused its discretion in granting the Compromise because the Compromise was not fair and equitable as it was not in the best interests of the SMACI creditors. Most of this argument is centered on the Moon policy and on the Trustee's failure to pursue state law claims against Foxglove and the Salyers.

■ "Compromises are favored in bankruptcy." 10 *Collier on Bankruptcy* ¶ 9019.01, at 9019–2 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006). The purpose behind compromises "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1380–81 (9th Cir. 1986). In the absence of any statutory guidance in the Bankruptcy Code as to how to evaluate the factual circumstances

of compromises, many bankruptcy courts have looked for guidance from the pre-Code case *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). *See, e.g., In re Nutraquest, Inc.,* 434 F.3d 639, 644–45 (collecting cases) (3d Cir.2006); *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 356 (5th Cir.1997); *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir.1989).

 Unlike the Code, the Bankruptcy Act statutorily required that all compromises be "fair and equitable." *Trailer Ferry,* 390 U.S. at 424, 88 S.Ct. 1157. *In Trailer Ferry,* the Supreme Court analyzed the meaning of this term, concluding the following:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and . . . . the need to compare the terms of the compromise with the likely rewards of litigation."[4]

*Id.* at 424–25, 88 S.Ct. 1157. Citing *Trailer Ferry,* the Tenth Circuit has stated that "[t]he bankruptcy court's decision to approve the settlement . . . must be an informed one based upon an objective evaluation of developed facts." *Reiss,* 881 F.2d

at 892. This court adopted the following four-prong test derived from *Trailer Ferry* for evaluating the factual circumstances of a compromise: (1) the chance of success on the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors. *In re Kopexa Realty Venture Co.,* 213 B.R. 1020, 1022 (10th Cir. BAP 1997). "A bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion." *Reiss,* 881 F.2d at 891–92. We must accept the bankruptcy court's findings as true unless they are clearly erroneous. *Yukon Self Storage Fund v. Green (In re Green),* 876 F.2d 854, 856 (10th Cir.1989); Fed. R. Bankr.P. 8013.

 Korngold argues that the bankruptcy court abused its discretion by not considering the best interests of the SMACI creditors because it discriminated against them by depriving them of potential assets. Specifically, Korngold claims that the bankruptcy court erred when it approved the release of any claims the estate might have had against Salyers and Foxglove and the assignment of the Moon policy. Both of these arguments are premised on Korngold's contention that the Trustee breached her fiduciary duty to SMACI creditors and did not apprise the bankruptcy court of all the facts. We disagree.

Before approving the Compromise, the bankruptcy court carefully went through each prong of the "fair and equitable test."[5] First, the bankruptcy court con-

---

**4.** In *Nutraquest,* the Third Circuit observes that origin of these four factors can be traced back to a 1929 Eight Circuit case, *Drexel v. Loomis,* 35 F.2d 800, 806 (8th Cir.1929). *Nutraquest,* 434 F.3d at 645.

**5.** We observe that the bankruptcy court evaluated the compromise under a ten factor test

used the Tenth Circuit in *Am. Employers' Ins. Co. v. King Res. Co.,* 556 F.2d 471 (1977). The ten factors articulated there are as follows:

> (1) The balance between the likelihood of plaintiff's or defendants' success should this case go to trial vis a vis the concrete pres-

sidered Korngold's argument that it was error to release any claims against Foxglove and the Salyers. In reviewing the evidence, the bankruptcy court observed that there was scant evidence that would support a claim for equitable subordination and that most of the factors militated against reclassifying the debt as equity. The bankruptcy court observed that Korngold had not produced any evidence of wrongdoing on the part of Foxglove and Salyers but had relied on hearsay and opinion.

Next, the bankruptcy court concluded that as the SMACI estate had no assets, there would not have been any recovery for the SMACI creditors except to the extent that MALI was jointly and severally liable with SMACI on the creditors' claims. Korngold disputes this finding, indicating the Moon policy.

With regard to the Moon policy, the bankruptcy court found as follows:

> I mentioned that the trustee decided to discontinue making premium payments. Mr. Moon died before the settlement agreement was signed, and the life insurance policy on his life was something in excess of $500,000. Ms. Loyd testified that the terms had been agreed upon before the settlement, that there was no reason to believe that Foxglove

or its principals had any indication that the death of Dr. Moon was imminent or even in the foreseeable future, and because she believed that she had made an agreement, although it had not been memorialized, and that she was obligated to go forward with the agreement, and that litigation would have ensued if she had attempted to back out of it. There also was evidence that the insurance proceeds for the insurance policy had been assigned, collaterally assigned to Foxglove.

Transcript of Ruling on Motion at 20, *in* Appellants' Appendix at 1205. These findings are supported by the record and Korngold has indicated no error in the bankruptcy court's conclusions other than his contention that the policy should not have been assigned to Foxglove. However, Korngold offers no legal basis for this conclusion, nor does he dispute that the Moon policy had already been partially assigned prior to the Compromise to Foxglove for the purpose of paying the premiums.

In conclusion, the bankruptcy court found that the Compromise which would result in a sixty-percent distribution to all unsecured creditors and bring the case to

---

ent and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures.
(2) The prospect of complex and protracted litigation if the settlement is not approved.
(3) The proportion of the class members who do not object or who affirmatively support the proposed settlement.
(4) The competency and experience of counsel who support the settlement.
(5) The ratio between total benefits to the [creditors] provided by the settlement in comparison to the maximum dollar limits
. . . .
(6) The relative benefits to be received by individuals or groups within the class.

(7) The capacity of [the insurer] to pay a judgment up the maximum limits of the subject policy but more than the dollar value it would give by virtue of the settlement.
(8) The current and projected financial condition of [the debtor] . . . .
(9) The nature and breadth of releases to be obtained . . . as a result of the settlement.
(10) The extent to which the settlement is truly the product of "arms-length" bargaining, and not of fraud or collusion.
*Am. Employers'*, 556 F.2d at 475 (citations and internal quotation marks omitted). This ten factor test has subsequently collapsed into the four-factor test discussed *infra*. *See Kopexa*, 213 B.R. at 1022.

a close was in the best interests of the estate.

 Here, Korngold argues that the bankruptcy court's findings of fact were against the weight of the evidence because the Trustee was not credible and the bankruptcy court did not accord Korngold's evidence the proper weight. It urges us to reverse based on Korngold's interpretation of the evidence. That we cannot do. We must accept the bankruptcy court's determination " 'unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " *In re Mama D'Angelo, Inc.*, 55 F.3d 552, 555 (10th Cir.1995) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972)). We have carefully considered the record and the arguments and do not find the bankruptcy court's findings of fact clearly erroneous. Contrary to Korngold's assertion, the bankruptcy court's approval of the Compromise was not an abuse of discretion.

### III. Conclusion

For the reasons set forth, we affirm the Order of the bankruptcy court.[6]

---

**6.** The Trustee's Motion to Supplement the Record on Appeal, filed March 8, 2006, is