BAP Appeal No. 20-40     Docket No. 52     Filed: 07/13/2021     Page:

**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**July 13, 2021**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

———————————————————

IN RE JEANETTE WELLERS,

    Debtor.

———————————————————

JEANETTE WELLERS,

    Appellant,

v.

M. STEPHEN PETERS, Chapter 7
Trustee, SIMON E. RODRIGUEZ, Chapter
7 Trustee, and GREAT AMERICAN
INSURANCE COMPANY,

    Appellees.

BAP No. CO-20-040

Bankr. No. 18-10240
Chapter 7

OPINION

———————————————————

Appeal from the United States Bankruptcy Court
for the District of Colorado

———————————————————

Before **CORNISH**, **MICHAEL**, and **HALL**, Bankruptcy Judges.

———————————————————

**CORNISH**, Bankruptcy Judge.

———————————————————

[1]This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

This appeal involves the proceeds of the sale of a chapter 7 debtor's residence. After selling the residence with court approval, the chapter 7 trustee proposed a settlement agreement between the trustee and a secured creditor, resolving the estate's civil claims against the creditor in exchange for a reduction in the amount of the creditor's secured claim. The United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") approved the settlement agreement over the debtor's objection. The debtor appeals, arguing the settlement resulted in denial of her homestead exemption.

Because the Bankruptcy Court expressly did not decide the issue of the debtor's homestead exemption, we will not consider that issue on appeal. Finding no abuse of discretion in approving the settlement agreement, we AFFIRM the Bankruptcy Court's order.

## I.    Background and Procedural History

According to her schedules, Jeanette Wellers (the "Debtor") is the owner of a contractor business called JBlanco Enterprises, Inc. ("JBE").[2] In 2011, Great American Insurance Company ("GAIC") issued a performance bond in connection with a JBE construction project at the United States Air Force Academy in Colorado Springs, Colorado. Prior to the bond issuance, the Debtor signed an indemnity agreement, agreeing to indemnify GAIC for any payments made under the bond. The indemnity agreement provided the Debtor waived the right to claim any property, including a homestead, exempt from levy or execution in the event GAIC sought to collect under the

---

[2]*Statement of Financial Affairs* at 9, *in* Appellant's App. at 23.

agreement. At the time, the Debtor lived at 12570 East Dakota Avenue, Lakewood, Colorado.

In November 2016, GAIC paid out $549,271.25 on JBE's behalf to cover claims for flawed roof work. Being personally liable for the debt, the Debtor entered into a settlement agreement with GAIC requiring her to sign a confession of judgment[3] and a promissory note in the amount of $549,271.25.[4] GAIC secured the promissory note with a mortgage against (1) the Debtor's current residence at 140 Humboldt Street, Denver, Colorado (the "Residence")[5] and (2) a commercial property at 1 Park Street, Broomfield, Colorado ("Park Street").[6]  The Debtor owned the Residence with her husband. Park Street was owned by Evan Charles Properties, LLC ("ECP"), a company wholly owned by the Debtor.

The Debtor filed a chapter 11 petition on January 12, 2018. Her husband, Frederick Wellers, filed a chapter 7 petition on February 1, 2018. The Bankruptcy Court converted the Debtor's case to chapter 7 on July 20, 2019. Stephen Peters is the trustee in the Debtor's case, and Simon Rodriguez is the trustee in her husband's case (the "Trustees").

Before the conversion of her case, the Debtor filed an adversary proceeding against GAIC to set aside the confession of judgment, promissory note, and mortgages as

---

[3] *Confession of Judgment*, *in* Appellant's App. at 96.
[4] *Promissory Note*, *in* Appellant's App. at 100 (providing for monthly payments of $3,500, an annual payment of $25,000, and a five-year balloon payment of $343,666.80, interest to accrue at 5%).
[5] *Mortgage*, *in* Appellee's App. at 93.
[6] *Mortgage*, *in* Appellee's App. at 104.

fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548(a)(1)[7] and to seek recovery and preservation pursuant §§ 550 and 551.[8] GAIC filed counterclaims seeking to deny the Debtor's discharge. To facilitate the sale of the Residence and Park Street, the Debtor's trustee sought to settle the adversary proceeding involving GAIC. Because the liens securing GAIC's $972,000 claims in the Debtor's and Frederick Wellers' bankruptcy cases were cross-collateralized, obtaining any equity for distribution to unsecured creditors required the sale of both the Residence and Park Street. Therefore, the Trustees negotiated a global settlement agreement in both bankruptcy cases providing GAIC would reduce its claim from $972,000 to $650,000 in exchange for the Debtor's estate's release of its claims against GAIC. The Bankruptcy Court approved the global settlement allowing the Trustees to split the proceeds from the sale of the Residence and Park Street equally between Mr. and Mrs. Wellers' estates.[9]

As part of the global settlement, the Trustees filed a motion to sell the Residence for $2.3 million (the "Motion to Sell"), which was approved by the Bankruptcy Court, over the Debtor's objection, on August 20, 2020.[10] Proceeds of the sale went to JP Morgan Chase Bank's first mortgage of $1,072,421.42, TBK Bank's second mortgage of $769,912.53 (secured by both the Residence and Park Street), and a $988.63 mechanics

---

[7] All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

[8] *Complaint*, *in* Appellant's App. at 81.

[9] *Order Approving Settlement Agreement Between Chapter 7 Trustee and Trustee Simon Rodriguez*, *in* Appellant's App. at 191.

[10] *Order: (1) Granting Trustee's Motion to Sell; (2) Denying Debtor's Motion to Abandon; and (3) Granting, in Part, Trustee's Motion to Compel Turnover* (the "Order Approving Sale"), *in* Appellee's App. at 390.

lien.[11] The Order Approving Sale projected after payment of these liens and closing costs $310,070.85 in proceeds would remain.[12] This provided $248,056.68 to GAIC and $62,014.17 to be split by the Trustees for benefit of the respective estates. The Debtor's Trustee had proposed to pay the Debtor $105,000.00 for her homestead exemption but GAIC objected, claiming the Debtor had waived her exemption. The Bankruptcy Court's Order Approving Sale noted that the Debtor, through her counsel, had indeed waived her homestead exemption. The Bankruptcy Court expressly stated that the expected distribution of funds from the sale of the Residence did not include any payment to the Debtor attributable to her homestead exemption. The Bankruptcy Court noted that the liens on her Residence exceeded its value – a fact that was conceded by the Debtor – so there was no equity to which her homestead could attach. The Bankruptcy Court did not foreclose the possibility that funds may be available to the Debtor upon its future consideration of the proposed stipulation (the "Carve-Out Stipulation").[13] The Debtor did not appeal the Order Approving Sale.

The Trustees filed the *Motion to Approve Carve-Out Stipulation* (the "Carve-Out Motion") on August 5, 2020.[14] The Carve-Out Motion provided GAIC would receive 80 percent of the remaining proceeds from the sale of the Residence, and the Trustees of each estate would split the remaining 20 percent. Once GAIC obtained $650,000 from the

---

[11] *Id.* at 5, *in* Appellee's App. at 394.
[12] *Id.* at 3, *in* Appellee's App. at 392.
[13] *Id.*
[14] Appellant's App. at 454. *Carve-Out Stipulation*, *in* Appellant's App. at 460.

proceeds of both the Residence and Park Street,[15] any remaining funds would go to the Trustees for their commission and distribution. The Carve-Out Motion did not specifically provide for the Debtor's $105,000 homestead exemption claimed in the Residence. None of the funds made available to the Trustees would come from the Debtor's homestead exemption amount; instead, the Trustees would recover from GAIC's reduction of its claim. Therefore, the Debtor's homestead exemption was not at issue in the Carve-Out Motion. GAIC would receive the Debtor's $105,000 homestead exemption as part of the satisfaction of its $650,000 claim. The stipulation noted GAIC disputed the Debtor's claim of a homestead exemption because of her waiver of the exemption in the 2011 indemnity agreement.

The Debtor objected to the Carve-Out Motion and approval of the stipulation. She argued (1) there was no equity in the Residence; (2) attempts to sell property when there is no equity and a debtor will not receive a homestead exemption are suspect; (3) the Trustees sought to enrich themselves through a $94,000 commission on the sale of the Residence instead of properly abandoning the encumbered property; and (4) the sale would not generate proceeds for unsecured creditors.[16] The Debtor also filed a brief in

---

[15] The Trustees negotiated a sale of Park Street for $1,750,000, although pleadings related to that sale are not contained in the record on appeal. *See Trustee's Motion for Authority to (a) Sell Property of the Bankruptcy Estate, 1 Park Street, Broomfield . . . .*, Bankr. ECF No. 630.

[16] *Corrected* Debtor's Objection to Trustee's Motion to Approve Carve-Out Stipulation* at 3-5, *in* Appellant's App. at 496-98. The Trustees filed a motion to strike the Debtor's objection to the Carve-Out Motion, but the Bankruptcy Court indicated "striking the objection would not give these parties the clearest and surest path toward finality of this dispute." *Order and Notice of Non-Evidentiary Hearing* at 1, *in* Appellee's App. at 387.

support of her objection.[17] The brief largely repeated the same objections, asserted the

Trustees mismanaged the Park Street property after a fire, and asserted the Debtor did not

waive her homestead exemption because the 2011 indemnity agreement pertained to her

home on the date she executed the agreement (her prior home in Lakewood, Colorado),

not to the Residence. The Debtor argued equity should be calculated based on the total of

"non-avoidable, consensual liens and encumbrances,"[18] leaving $430,143.10 in equity.

Therefore, the Debtor argued she was entitled to her entire $105,000 homestead

exemption.

The Bankruptcy Court conducted an evidentiary hearing on the Carve-Out Motion

on September 3, 2020. The Debtor again argued that she had not in fact waived her

homestead exemption, but the Bankruptcy Court declined to consider any challenge to

waiver in considering the Carve-Out Motion.[19] The Bankruptcy Court advised the parties

to be prepared to address the homestead waiver issue at a future hearing.[20] In the *Order

Granting Trustees' Motion to Approve Carve-Out Stipulation* (the "Carve-Out Order"),

the Bankruptcy Court observed that in her objection to the Motion to Sell, the Debtor

conceded she waived the homestead exemption.[21] The Bankruptcy Court analyzed the

Carve-Out Motion and stipulation under the factors adopted by *In re Kopexa Realty*

---

[17] *Debtor's Brief Regarding Trustee M. Stephen Peters' and Trustee Simon Rodriquez's Motion to Approve Carve-Out Stipulation and the Objection filed by Debtor Jeanette Wellers*, *in* Appellant's App. at 540.
[18] *Id.* at 7, *in* Appellant's App. at 546.
[19] *Tr. Sept. 3, 2020 Hearing* at 9, 30-36, *in* Appellee's App. at 563, 584-90.
[20] *Id.* at 36, *in* Appellee's App. at 590.
[21] Carve-Out Order at 2, *in* Appellant's App. at 565.

*Venture Co.*[22] and approved the stipulation. The Bankruptcy Court concluded (1) the Debtor did not challenge the Trustees' assertion that they investigated the claims against GAIC and believed they were meritless, (2) the complexity and expense of litigation would burden the Debtor's estate, and (3) other creditors' approval of the stipulation all supported granting the Carve-Out Motion.[23] The Bankruptcy Court conceded the difficulty of collection factor did not weigh in favor of approval. The Bankruptcy Court also noted the Debtor's objection centered on the homestead exemption, an issue not before the court, and failed to point out how the stipulation was unfair, inequitable, or not in the best interests of the estate.[24] Accordingly, the Bankruptcy Court granted the Carve-Out Motion and approved the stipulation.

The Debtor filed a timely notice of appeal on September 14, 2020. The Debtor did not seek a stay pending appeal from the BAP or the Bankruptcy Court—however, the appellees do not suggest the appeal is moot.

## II.    Jurisdiction and Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[25] An order granting a motion to approve a compromise of claims is final for

---

[22] 213 B.R. 1020 (10th Cir. BAP 1997).

[23] Carve-Out Order at 3-4, *in* Appellant's App. at 566-67.

[24] *Id*.

[25] *Straight v. Wyo. Dep't of Transp. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

8

purposes of 28 U.S.C. § 158(a)(3).[26] None of the parties in this case elected for this appeal to be heard by the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

We review a bankruptcy court's approval of a settlement agreement brought pursuant to Rule 9019 for an abuse of discretion.[27] "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[28] An abuse of discretion occurs when a trial court "makes an 'arbitrary, capricious or whimsical,' or 'manifestly unreasonable judgment.'"[29] "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."[30]

We review a bankruptcy court's findings of fact for clear error. "A factual finding is 'clearly erroneous' when 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[31] But if the bankruptcy court's "factual findings are premised

---

[26] *See Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 254 (10th Cir. BAP 2006).

[27] *Id.* at 256.

[28] *In re Arenas*, 535 B.R. 845, 849 (10th Cir. BAP 2015) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

[29] *Id.* (quoting *Moothart*, 21 F.3d at 1504-05).

[30] *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

[31] *LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 643 (10th Cir. BAP 2014) (quoting *Las Vegas Ice & Cold Storage Co. v. Far*

on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review."[32]

We review questions of law *de novo*, which "requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[33]

### III.     Analysis

#### a.  Debtor's Issue on Appeal

The Debtor asks this Court to review her claim of the homestead exemption, an issue she admits the Bankruptcy Court did not consider. In the "Rulings Presented for Review" section of Appellant's Brief, the Debtor states:

> The [Bankruptcy] Court has not ruled on the homestead exemption if it is applicable as per the carve-out agreement. The [Bankruptcy] Court simply passed on the ruling but should have ruled because that issue was in front of the Court. So Debtor is asking the BAP to review and issue a ruling in our favor, based on the evidence.[34]

---

*W. Bank)*, 893 F.2d 1182, 1185 (10th Cir. 1990)), *aff'd*, 619 F. App'x 779 (10th Cir. 2015) (unpublished).

[32] *In re Novinda Corp.*, 585 B.R. 145, 152 (10th Cir. BAP 2018) (quoting *Osborn v. Durant Bank & Tr. Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994), *abrogated in part on other grounds by Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151 (10th Cir. 2007)).

[33] *In re Expert S. Tulsa, LLC*, 522 B.R. at 643 (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[34] Appellant's Br. 22. The Debtor reiterates this is her only argument in her responses to the appellees' briefs. Appellant's Reply Br. 8 ("It is about the Bankruptcy Court's erroneous failure to rule on the Appellant's Homestead Exemption as it is defined in the Carve-out agreement.").

The Carve-Out Order expressly states, "[t]he only issue before the Court at this time is whether to approve a fairly simple settlement agreement."[35] The Bankruptcy Court also stated the Debtor's "only arguments against the Carve-Out [Motion] were her contention that she is entitled to her homestead exemption and collateral challenges to this Court's approval of the sale of [the Residence]. Neither matter is presently before the Court."[36] Thus, the Bankruptcy Court expressly declined to rule on the Debtor's stated issue on appeal.

As has been held numerous times, "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."[37] An issue is not passed on below if it has not been "presented to, considered [and] decided by the trial court."[38] Policy reasons for limiting review to issues actually considered by a lower court include preventing surprise on appeal, allowing whatever evidence there may be to be presented, and allowing parties the opportunity to present legal arguments.[39] The Tenth Circuit Court of Appeals (the "Tenth Circuit") enumerated other reasons for not considering such issues, including the need to frequently remand for evidentiary hearings, the need for finality in litigation, and the conservation of judicial resources.[40] The noted

---

[35] Carve-Out Order at 3, *in* Appellant's App. at 566.

[36] *Id.* at 4, *in* Appellant's App. at 567; *Tr. Sept. 3, 2020 Hearing* at 36, *in* Appellee's App. at 590 (suggesting the Bankruptcy Court would consider future challenges to the waiver of the homestead exemption).

[37] *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

[38] *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) (quoting *Cavic v. Pioneer Astro Indus. Inc.*, 825 F.2d 1421, 1425 (10th Cir. 1987)).

[39] *Singleton*, 428 U.S. at 120.

[40] *Lyons*, 994 F.2d at 721 (quoting *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970-71 (10th Cir. 1991)).

exceptions to this rule are the need to address the court's jurisdiction or when sovereign immunity is raised[41] or other situations "where 'injustice might otherwise result.'"[42] Thus, the Tenth Circuit exercises its "discretion to hear issues for the first time on appeal only in the most unusual circumstances."[43]

The Debtor fails to point to any unusual circumstances or injustice that would convince us to consider an issue not addressed or decided in the order on appeal. The Debtor suggests the Trustees improperly (i) sold the Residence, which lacked equity, to earn a commission and (ii) allowed GAIC to enhance its claim. The Debtor also attacks findings made by the Bankruptcy Court in the Order Approving Sale, which she did not appeal. She ignores the fact that the Residence and Park Street were cross-collateralized. The Trustees' negotiation and global settlement in both bankruptcy cases resulted in a sale of both properties and a reduction of GAIC's claim, which generated equity for the Trustees to distribute. She has always conceded that the Residence itself lacked sufficient equity to satisfy all liens against it and her homestead exemption. Therefore, regardless of the waiver issue, after satisfaction of the secured claims, there were no funds available to pay her the homestead exemption.[44] The dispute over the Debtor's homestead exemption

---

[41] *Id.* (citing *Hicks*, 928 F.2d at 920).

[42] *Id.* (quoting *Singleton*, 428 U.S. at 121).

[43] *Id.* (citing cases as examples of unusual circumstances).

[44] *Motion to Abandon Interest in Property Pursuant to 11 U.S.C. Section 554(b)* (the "Motion to Abandon") at 3-4, *in* Appellant's App. at 277-78. The Debtor admitted that there was a lack of equity in the Residence during the proceedings on the Motion to Sell and the Motion to Abandon. The Debtor argued that the Residence was of inconsequential value to the estate and should thus be abandoned to her. *Order: (1) Granting Trustee's Motion to Sell; (2) Denying Debtor's Motion to Abandon; and (3)*

is between the Debtor and GAIC, as clearly stated in the Carve-Out Motion and by the Bankruptcy Court in its Carve-Out Order. We do not believe the Debtor has identified any unusual circumstances that would justify deviation from the well-established rule that an appellate court does not consider an issue not ruled on below. Therefore, we decline to address the issue of her homestead exemption.

### b. Bankruptcy Court's Approval of the Carve-Out Stipulation

The Debtor does not challenge the Bankruptcy Court's findings and conclusions regarding the Carve-Out Stipulation on appeal. However, as the Debtor argues that the Carve-Out Motion should never have been approved by the Bankruptcy Court and that some courts have found carve-out deals to be improper where an asset is fully encumbered, we will review the Bankruptcy Court's analysis of the settlement.

Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") governs the approval of a compromise or settlement. In interpreting a bankruptcy court's duty under Rule 9019, case law suggests "[t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."[45] A court need not conduct a mini-trial

---

*Granting, in Part, Trustee's Motion to Compel Turnover* at 3-5, *in* Appellee's App. at 392-94.

[45] *In re Armstrong*, 285 B.R. 344, 2002 WL 471332, at *2 (10th Cir. BAP March 28, 2002) (unpublished) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)), *aff'd*, 99 F. App'x 210, 213 (10th Cir. 2004).

or decide the numerous questions of law and fact,[46] but its decision to approve a settlement "must be an informed one based upon an objective evaluation of developed facts."[47] Accordingly, this Court has held that a bankruptcy court must evaluate the factual circumstances of a compromise in light of: "(1) the chance of success on the litigation on the merits; (2) possible problems in collecting the judgment; (3) the expense and complexity of the litigation; and (4) the interest of the creditors."[48] "[T]he court need not resolve all of these issues, but must only identify them 'so that the reasonableness of the settlement may be evaluated.'"[49] Thus, these factors[50] facilitate a "court's general charge [ ] to determine whether the settlement is fair and equitable and in the best interests of the estate."[51]

The Bankruptcy Court evaluated the stipulation and Carve-Out Motion utilizing the *Kopexa* factors. In considering the first factor, the Bankruptcy Court determined the

---

[46] *See In re Brutsche*, 500 B.R. 62, 71 (Bankr. D.N.M. 2013).

[47] *Korngold v. Loyd (In re S. Med. Arts Cos.)*, 343 B.R. 250, 256 (10th Cir. BAP 2006) (quoting *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989)); *see also In re Armstrong*, 2002 WL 471332, at *2 ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." (quoting *Anderson*, 390 U.S. at 424 )).

[48] *Loyd v. Foxglove, Inc. (In re S. Med. Arts Companies, Inc.)*, 343 B.R. 250, 256 (10th Cir. BAP 2006) (citing *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997)); *see also In re Armstrong*, 99 F. App'x 210, 213 (10th Cir. 2004) (unpublished).

[49] *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 579 (D. Colo. 1998) (quoting *In re The Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr. D. Colo. 1986)).

[50] Hereinafter referred to as the *Kopexa* Factors, established by *In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (10th Cir. BAP 1997).

[51] *In re Rich Global, LLC*, 652 F. App'x 625, 631 (10th Cir. 2016) (unpublished) (quoting *W. Pac. Airlines Inc.*, 219 B.R. at 579).

14

settlement that included a $322,000 reduction in GAIC's secured claim in exchange for dismissal of the estate's claims was "eminently reasonable and a proper exercise of the [T]rustees' business judgment" based on the "[T]rustees' assertion that they have investigated the [claims against GAIC] and believe they are wholly without merit."[52] It noted that the Debtor did not challenge this assertion.[53] The Bankruptcy Court found the second factor regarding the complexity and expense of continuing the litigation supported approval of the settlement since continuation of the litigation would result in additional administrative expenses that would burden the Debtor's estate. There was no concern regarding the third factor of collecting a judgment against GAIC so the Bankruptcy Court found this factor did not support approval. As to the fourth factor, the Bankruptcy Court noted that no creditor objected to the settlement, thus weighing in favor of approving the stipulation. Importantly, the Bankruptcy Court found the stipulation freed up $770,000 in equity in Park Street, and the combination of the sales of the Residence and Park Street resulted in a significant distribution to unsecured creditors in both bankruptcy estates. These facts satisfy any objection to a carve-out deal of the fully encumbered Residence since this agreement resulted in a meaningful distribution to creditors.[54]

The Bankruptcy Court carefully considered and set forth the facts and made an objective evaluation of those facts utilizing the *Kopexa* factors, the appropriate legal

---

[52] Carve-Out Order at 3, *in* Appellant's App. at 566.
[53] *Id.*
[54] *See In re Bird*, 577 B.R. 365, 378 (10th Cir. BAP 2017) ("[C]arve out agreements are only permitted if they result in *meaningful* distributions to creditors. And the definition of meaningful depends on the totality of circumstances.").

standard for analyzing a settlement.[55] After reviewing the Carve-Out Order, we see no reason to overturn the Bankruptcy Court's findings and conclude it did not abuse its discretion in approving the Carve-Out Motion.

## IV.    Conclusion

The Debtor appeals the Carve-Out Order on the grounds it deprives her of her claimed homestead exemption. The Bankruptcy Court expressly stated the homestead exemption issue was not before it and did not decide that issue. Accordingly, this Court may not review that issue raised by the Debtor. This Court finds no error in the Bankruptcy Court's analysis and approval of the Carve-Out Motion utilizing the *Kopexa* factors. Because we do not have a definite and firm conviction that the Bankruptcy Court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances presented, the Carve-Out Order is AFFIRMED.

---

[55] *Isho v. Loveridge (In re Isho),* 498 B.R. 391(10th Cir. BAP 2013) (unpublished).